658 P.2d 456

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Timothy L. POWELL, Defendant-Appellee.**

No. 5843.

Court of Appeals of New Mexico.

Jan. 6, 1983.

Certiorari Denied Feb. 4, 1983.

John B. Bigelow, Chief Public Defender, William P. Slattery, Asst. Appellate Defender, Santa Fe, for plaintiff-appellant.

Paul G. Bardacke, Atty. Gen., William H. Lazar, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

WOOD, Judge.

This appeal involves the "plain view" doctrine of the law of search and seizure. The trial court suppressed marijuana recovered from inside the cab of a pickup truck, and cocaine which the driver attempted to throw away, on the basis that the officer was not lawfully in a position to see the marijuana. We reverse, discussing: (1) the facts; and (2) "plain view".

*Facts*

Around 10:00 p.m. a deputy sheriff observed a pickup truck weaving ahead of him. The weaving was described as crossing the center line of the pavement and then going almost off the pavement on the right side of the road. The deputy thought the driver of the pickup was intoxicated.

The deputy stopped the pickup when it turned into a side road. The trial court made no ruling as to the validity of this stop; the only evidence is that this was a valid investigatory stop. *State v. Galvan,* 90 N.M. 129, 560 P.2d 550 (Ct.App.1977).

Upon stopping, the driver of the pickup immediately got out of the vehicle and walked to the rear of the vehicle. The deputy observed the driver's movements, which appeared normal, he asked the driver to produce his driver's license and smelled no odor of alcohol. The deputy was satisfied that the driver was not intoxicated.

■ Almost immediately after asking the driver to produce his driver's license, the deputy walked past the driver and looked inside the cab of the pickup. Prior to the stop, the deputy knew there were passengers. The deputy testified that he looked inside the cab for his own safety—to check for weapons. The trial court rejected this explanation on the basis of various precautions the officer failed to take for his own safety—failing to draw his own weapon, failing to frisk the driver, turning his back on the driver. We cannot say the trial court's view of this evidence was erroneous. *See State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977).

■ The deputy testified that he stood by the driver's door of the pickup and shined his light into the cab. He saw two passengers and was satisfied they were not armed. In looking into the cab he observed that the interior of the cab had no lining. In the groove above the door on the passenger's side of the cab, into which a liner would have been fitted, he observed a plastic bag. The trial court found that in looking into the cab the deputy was engaged in a search and concluded that the plastic bag was obtained as a result of an exploratory search. There was no search in the sense of an exploratory investigation, or a prying into hidden places for that which is concealed. The mere looking at that which is open to view is not a search. *State v. Blackwell,* 76 N.M. 445, 415 P.2d 563 (1966). The deputy saw the plastic bag when, from outside the pickup, he looked into the interi-

or of the cab. The deputy did not crane his neck, lean into the truck or do anything unusual to see the plastic bag. The deputy viewed the plastic bag without a search. The trial court also found that after ascertaining that the passengers were not armed, the deputy continued to "search the cab of the pick up truck for approximately 20 seconds." No evidence supports this finding.

■ The deputy saw that the plastic bag contained a green leafy substance; a "baggie with green particles in it." "[I]t appeared to be marijuana". The deputy asked defendant, one of the passengers, to hand him the baggie. The deputy intended to seize the baggie if it contained marijuana; it did. "The defendant argues that considering the officer's testimony as a whole, it is a fair contention that he acted merely on a hunch after viewing only the plastic bag." No issue was raised at the evidentiary hearing concerning the deputy's ability to recognize marijuana and the trial court did not rule on such an issue. *See State v. Sandoval,* 92 N.M. 476, 590 P.2d 175 (Ct.App.1979); *compare State v. Cortez,* (Ct.App.) No. 5587, decided November 16, 1982, *certiorari granted* December 16, 1982. Being raised for the first time in this appeal, this contention will not be considered. Rule of Crim.App.Proc. 308, N.M.S.A.1978.

After obtaining the plastic bag containing marijuana, the deputy had the passengers get out of the cab and had both the driver and the passengers place their hands on the bed of the pickup. All were placed under arrest for possession of marijuana. The deputy called for assistance by radio. While using the radio, he saw Taylor, the driver, throw something backwards toward the fence with his left hand. It appeared to be two baggies. When help arrived the deputy retrieved two baggies from the weeds. The baggies contained envelopes and the envelopes contained cocaine.

Defendant was charged with possession of cocaine with intent to distribute. The trial court ruled that to apply the plain view exception to the constitutional re-

quirement for warrants, the deputy must "be lawfully in the position from which he saw any evidence which was seized." The trial court ruled that the deputy was not lawfully in a position to see the baggie of marijuana. On this basis, the marijuana and cocaine were suppressed as evidence.

Inasmuch as there was a lawful investigatory stop and inasmuch as there was no search, the factual basis of the trial court's ruling, necessarily, was that the purpose of the investigatory stop was completed when the deputy became satisfied that the driver was not intoxicated and thereafter the deputy could not lawfully look inside the cab of the pickup stopped at the side of a public road. We disagree.

*"Plain View"*

■ In the law of search and seizure, the "plain view" rule has two meanings.

The first, and more common meaning, is discussed in *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), in terms of an intrusion justified by a warrant, a "hot pursuit" or search incident to an arrest. In these, and similar situations, there was "a prior justification for an intrusion in the course of which ... [the police officer] came inadvertently across a piece of evidence incriminating the accused" and the incriminating nature of this evidence was immediately apparent. This meaning of plain view was summarized in *State v. Luna,* 93 N.M. 773, 606 P.2d 183 (1980). This first meaning of plain view is not applicable in this case because of the facts.

The second meaning, applicable in this case, is stated in 1 W. LaFave, Search and Seizure § 2.2, pages 242–243 (1978):

[T]he concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in *Coolidge,* encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally

protected area. This includes the case in which an officer discovers an object which has been left in an "open field" or similar nonprotected area, and also those cases in which an officer—again, without making a prior physical intrusion—sees an object on the person of an individual, within premises, or within a vehicle. In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement.

It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion. Whether it is immediately apparent that what has been observed is evidence of crime may have a bearing upon what the police may do as a result of this nonsearch observation, but it is clearly irrelevant to the threshold issue of whether the observation was a search. And surely the observation need not have been inadvertent. As Judge Moylan has pointed out, in such a case

"the condition of inadvertence is certainly not operational. In surveying sidewalks, streets and gutters and in roaming the 'open fields' (even as technical trespassers), the police would seem to be free to go on fishing expeditions or to go on planned reconnaissances * * * in such nonprotected places, whether the viewing be inadvertent or not."

The reference to "Judge Moylan" is to Moylan, The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle, 26 Mercer L.Rev. 1047 (1974–75); *see 1 LaFave, supra,* page 242, footnote 2. *See also, Scales v. State,* 13 Md. App. 474, 284 A.2d 45 (1971).

The absence of a requirement that there be an inadvertent discovery is further explained in *1 LaFave, supra,* § 2.5, page 356:

> The most common case is that in which the officer uses the sense of sight to detect what is inside the vehicle. "It is not unlawful, but entirely lawful, for a police officer who is on a public street or sidewalk to look, either deliberately or inadvertently, into an automobile parked on the street and to observe what is exposed therein to open view." [Quotation from *Cook v. Commonwealth,* 216 Va. 71, 216 S.E.2d 48 (1975).]

Under this second meaning—no prior intrusion and a view of incriminatory objects inside a vehicle by merely standing near it—*2 LaFave, supra,* § 7.5, page 591, states that as

> *Coolidge* instructs, the question is whether the officer had a "legitimate reason for being present" in the precise location where he made the observation. If the officer first stopped the car, this of course requires a determination as to the lawfulness of the stopping . . . .

In this case the prior stop was valid.

■ This brings us to the dispositive issue in this case. Once the purpose of the valid stop was completed, could the officer look inside the cab? Yes. *Com. v. Lehman,* 265 Pa.Super. 480, 402 A.2d 539, 541 (1979), states:

> The suppression judge obviously did not accept Officer Garrett's claim that his movement to the driver's side of the truck was motivated by a fear that the passenger might be of personal danger to him and/or his fellow officer; but his motivation is of no legal significance in this present case, since the officer had a legal right to be where he was when he shone the flashlight into the interior of the truck. See *Commonwealth v. Janek,* 242 Pa.Super. 340, 363 A.2d 1299 (1976).
>
> At that point, without any acceptable, proved motivation for using the flashlight, did the officer have a legal right to bring into "plain view" what was hidden by the darkness? We find he did, and so held in *Commonwealth v. DeJesus,* 226

Pa.Super. 79, 310 A.2d 323 (1973). See also *Commonwealth v. Nastari,* 232 Pa. Super. 405, 412, 335 A.2d 468 (1975). Once the purpose of the stop was completed, the deputy did no more than what "he and every member of the public had a right to do", *Scales v. State, supra;* he looked into a vehicle parked on a public road.

The evidence was suppressed on the basis that the deputy was not lawfully in a position to see the marijuana; that ruling was incorrect. The propriety of seizing a substance that could not be legally possessed, from a motor vehicle, is not involved. *See 1 LaFave, supra,* § 2.2, pages 243–245; *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

We recognize that our "plain view" decisions have not distinguished between the two meanings of the plain view rule. We have not attempted to review the decisions for the purpose of identifying which meaning was applied. However, *compare State v. Miller,* 80 N.M. 227, 453 P.2d 590 (Ct.App. 1969) with *State v. Anaya,* 82 N.M. 531, 484 P.2d 373 (Ct.App.1971) and *State v. Harrison,* 81 N.M. 324, 466 P.2d 890 (Ct.App. 1970).

The order suppressing evidence is reversed.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.