792 P.2d 1157

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Andrew CALVILLO,
Defendant–Appellant.**

No. 11616.

Court of Appeals of New Mexico.

April 17, 1990.

Certiorari Denied May 23, 1990.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Jerry Todd Wertheim, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

Defendant appeals his conviction for possession of a firearm by a felon. He has briefed three issues: (1) whether the trial court erred in failing to suppress evidence obtained as the result of an allegedly illegal search and seizure; (2) whether the prosecutor engaged in misconduct by purportedly commenting on defendant's right to remain silent; and (3) whether the trial court erred in refusing to give instructions concerning defense of property and defense of others. Issues concerning the sufficiency of the evidence raised in the docketing statement, but not briefed, are abandoned. *State v. Fish*, 102 N.M. 775, 701

P.2d 374 (Ct.App.1985). For the reasons that follow, we affirm.

## FACTS

In the early morning hours of July 19, 1988, Officer Rod Smith of the Hobbs Police Department received a complaint from Timothy Aten, defendant's next door neighbor. The complaint alleged that defendant fired a gun during a confrontation with Aten and two companions. Harvey Greer, Aten's stepbrother, testified that when he came home from work earlier that evening, he found that his door had been kicked and damaged. Aten told Greer that defendant had come over earlier that evening, fought with him over money, and had kicked in the door. Aten, Greer, and another man then went to defendant's residence. Aten was armed with a 2 × 4–inch piece of lumber. Greer knocked on the door. Defendant eventually came to the door and asked the three to leave. Aten yelled obscenities and racial epithets at defendant. Defendant went back into his house, put on the rest of his clothes, and left the house. The three men jumped into their car and followed defendant, catching up to him as he walked down an alley. During this time, defendant's wife and her six children also left the house and went to her mother's house. Defendant's wife, Maria Flores, testified that she left because she was afraid the three men might return. The three men continued their assault on defendant, shouting obscenities and throwing rocks from their car. Eventually, the three men drove away. Greer heard two gunshots in the vicinity soon thereafter, although he did not see defendant fire the shots. Sergeant Fuller and Officer Smith of the Hobbs Police Department also heard the shots while on patrol.

Sergeant Fuller and Officer Smith went to defendant's residence based on Aten's report of the shooting. They knocked on defendant's front door but received no response. Officer Smith and Sergeant Fuller then left the front door and began walking down a concrete driveway toward Greer's house. Greer testified the driveway was common to the two houses. As they were walking, Officer Smith directed Sergeant Fuller's attention to an open window in defendant's house. The room was illuminated by a bright streetlight or a light on a house adjacent to defendant's. The window was open; there was a screen hanging loosely on it but the window was easily seen through. The officers saw defendant lying on a bed on his back with a silver or brightly colored object in his hand. Officer Smith suspected the object was a pistol. Defendant appeared to be sleeping but Sergeant Fuller could not be sure of this.

The officers moved closer to positively identify the object in defendant's hand. A flashlight was shone into the window. Once Sergeant Fuller determined the object was indeed a gun, he recalled that defendant had a prior felony conviction. Officer Smith confirmed Sergeant Fuller's suspicion with a call to the police department. Sergeant Fuller testified that, while looking through defendant's window, he was at all times on the common driveway and outside of the fence enclosing defendant's property. Officer Smith testified that he was standing outside of the fence when he first noticed defendant's illuminated figure through the window. Officer Smith stated that he shone the flashlight on defendant, saw what appeared to be a pistol, moved closer to the window, again shone the light on defendant, and confirmed his suspicion about the gun. He could not recall whether he entered the fence enclosing defendant's yard at any time.

Regardless of whether Officer Smith actually went inside the fence, Sergeant Fuller unequivocally stated there was no need to go inside the fence to identify the object on defendant's chest. It is also clear that Officer Smith and Sergeant Fuller first noticed defendant and the gun while they were walking back to Greer's house on the common driveway. After consultation, the police decided to enter defendant's house rather than wait until morning to get a warrant because of the report that shots had been fired by defendant, and their concern for the safety of others in the area. When defendant failed to respond to loud knocks on the front door, the police re-

moved the window screen, entered the house, and arrested defendant.

## SEARCH AND SEIZURE

Defendant unsuccessfully moved to suppress the gun the police seized from him. He argues that the gun was illegally obtained as a result of the officers' shining a flashlight into his home. Alternatively, defendant contends that, even if the police had probable cause to search, the trial court incorrectly found that the exigent circumstances exception to the warrant requirement applied to this case. The state answers that (1) there was no fourth amendment "search" under the circumstances of this case; and (2) even if the officers' actions constituted a search, the search was justified under the plain view and exigent circumstances exceptions to the warrant requirement.

The touchstone of the fourth amendment analysis of the lawfulness of a search is whether the person has a constitutionally protected reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). The inquiry into whether the officers' actions were constitutionally appropriate in this case is twofold: (1) whether the officers' observations were a search, triggering the application of the "plain view" rule; and (2) whether the shining of the flashlight into defendant's window made viewing the gun an unconstitutional intrusion. We conclude that the officers' actions did not constitute a search within the meaning of the fourth amendment, inasmuch as the gun was in plain view.

The plain view rule has two meanings. *State v. Powell*, 99 N.M. 381, 658 P.2d 456 (Ct.App.1983). First, and most commonly, the term describes a seizure of evidence inadvertently discovered in the course of an intrusion for which there was prior justification, such as a search warrant. *Id.* The second plain view rule applies when no fourth amendment search has occurred at all. *Id.* It applies in those instances where an observation is made by an officer without a prior physical intrusion into a constitutionally protected area. *Id.*

The mere looking at that which is open to view is not a search. *State v. Blackwell*, 76 N.M. 445, 415 P.2d 563 (1966). We believe this second type of plain view rule applies in the present case.

When an officer employs his natural senses from a place where he has a right to be, there is no search in the constitutional sense. *Lorenzana v. Superior Court*, 9 Cal.3d 626, 511 P.2d 33, 108 Cal. Rptr. 585 (1973). Similarly, "no justified reliance is present when a person's in-premises activities may be readily observed or heard by neighbors, so that it is not a search for an officer to see or hear those activities from a neighbor's property." 1 W. LaFave, *Search and Seizure* § 2.3(c), at 391 (1987); *see State v. Texeira*, 62 Haw. 44, 609 P.2d 131 (1980). Moreover, a sidewalk, pathway, common entrance, or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectation of privacy concerning observations made there. *Lorenzana v. Superior Court*. The fourth amendment "has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986). Thus, in *Ciraolo*, the Supreme Court held that a warrantless naked-eye observation of a home's curtilage did not violate the fourth amendment. Likewise, in *State v. Rogers*, 100 N.M. 517, 673 P.2d 142 (Ct.App.1983), we held that the defendant did not have a justified expectation of privacy with respect to marijuana plants protruding through holes in his greenhouse roof to the extent of their visibility from the air.

We now turn to the facts of this case. From the common driveway, through the window, the officers saw defendant lying on his bed. The officers looked into the window just as defendant's neighbors could have observed him from the same vantage point. The officers observed that defendant was holding what appeared to be a gun. Under these circumstances, there was no fourth amendment search.

**118**

The second inquiry we must make is whether the flashlight the officers used to illuminate the gun in defendant's hand was an improper intrusion in violation of defendant's fourth amendment rights. We find the present case to be analogous to *Rogers.* In *Rogers,* the surveilling police officer flew over the defendant's property, using binoculars to confirm his suspicion that marijuana was growing on the property. The plants were visible without aid of the binoculars. In the present case, the gun could be viewed without a flashlight because there was a nearby light. The officers moved closer and shone a flashlight into the window to make a positive identification of the object. However, Sergeant Fuller stated that he never went inside defendant's fence. Thus, the use of the flashlight was not unconstitutionally intrusive. *Id.; see State v. Powell* (no search present where officer shone light into cab of pickup of lawfully stopped driver since officer merely looked at that which was open to view). Because we find no intrusion upon defendant's justified expectation of privacy, we need not discuss whether there was an appropriate search pursuant to the plain view or exigent circumstances exceptions to the warrant requirement.

Even though we conclude there was no fourth amendment search, this does not necessarily lead to the conclusion that the police were justified in entering defendant's home and seizing the gun without a warrant. *Compare Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality) (plain view alone is never enough to justify the warrantless seizure of evidence) *and Commonwealth v. Weik,* 360 Pa.Super. 560, 521 A.2d 44 (1987) (even if no search involved, plain view alone is not enough to justify seizure) *with State v. Foreman,* 97 N.M. 583, 642 P.2d 186 (Ct.App.1982) (different interest is violated by unreasonable search than is violated by unreasonable seizure) *and State v. Ferguson,* 106 N.M. 357, 743 P.2d 113 (1987) (warrantless seizure of contraband from incarcerated defendant held proper). While it is not certain whether our Supreme Court in *Ferguson* intended to hold that contraband in plain view may be seized without a warrant where there has been no prior justifiable intrusion, we are satisfied that we need not address this issue in the case before us.

Although defendant has not clearly argued the legality of the seizure of the gun without a warrant, we believe there were exigent circumstances in this case which would allow for the seizure. Questions of the exigency of the circumstances are fact questions for the trial court, whose decision will be upheld if supported by substantial evidence. *State v. Copeland,* 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986). Exigent circumstances means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. *Id.* The issue is not what the circumstances eventually show; it is whether, on the basis of facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary. *Id.*

In this case, the officers received a report that defendant had shot a firearm at others. Some of the officers themselves heard the shots. Sergeant Fuller and Officer Smith observed defendant lying on a bed holding a firearm. The officers were concerned about the safety of others in the area if defendant were to begin shooting again. Sergeant Fuller thought the police would be negligent in performing their duties if defendant fired further shots while they waited until morning to get a warrant. We believe substantial evidence supports the trial court's finding of exigent circumstances justifying warrantless seizure of the gun. *See id.*

## PROSECUTOR'S COMMENT ON WITNESSES' FAILURE TO COME FORWARD

Maria Flores and Greer testified on behalf of defendant at trial. Both testified concerning Aten's threatening behavior toward defendant. Defendant's defense to the possession of a firearm charge was self-defense. During closing argument,

the prosecutor stated that although Flores and Greer knew defendant had been arrested because of the incident, they did not tell authorities before trial that Aten was the aggressor. Defense counsel objected to the remarks on the ground that they constituted an improper comment on defendant's right to remain silent. The prosecutor explained that he was attempting to cast doubt upon the credibility of the witnesses. The trial court overruled the objection.

Defendant contends that the prosecutor's comments inferred collusion between defendant and the witnesses; hence, they were comments on defendant's own silence. The test for determining whether an accused's constitutional right against self-incrimination has been violated by a prosecutor's comment is whether the prosecutor's language directly called the jury's attention to the defendant's failure to testify, or whether the language was such that a jury would naturally and necessarily assume the remarks to be a comment on the accused's failure to become a witness. *State v. Lopez*, 105 N.M. 538, 734 P.2d 778 (Ct.App.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). The fifth amendment privilege against self-incrimination is personal to the defendant or witness. *State v. Hoffman*, 106 Wis.2d 185, 316 N.W.2d 143 (Ct.App. 1982). A comment on the failure of an alibi witness to come forward with his or her account ordinarily does not infringe on a defendant's right of silence. *Id.; Shadd v. United States*, 423 F.Supp. 511 (W.D.Pa. 1976).

We cannot agree with defendant that the prosecutor's argument in this instance amounted to a comment on his failure to testify. The prosecutor was commenting on the failure of Greer and Flores to complain to police about Aten's threatening behavior. Initially, we note that the prosecutor's comment was supported by the evidence. *See State v. Hernandez*, 104 N.M. 268, 720 P.2d 303 (Ct.App.1986) (prosecutor given latitude in his closing argument and may discuss inferences which can be drawn from the evidence). At trial, the witnesses unmistakably portrayed Aten as

the aggressor during the incident; yet they never complained to police, even after defendant was arrested. We believe this failure to come forward was probative of the witnesses' credibility. *See State v. Archer*, 32 N.M. 319, 255 P. 396 (1927) (witness's unexplained failure to disclose important information tends to impair his credibility if witness had opportunity to speak, and where it would be natural to speak). Moreover, the language used did not directly call the jury's attention to defendant's failure to testify, nor could it be so construed.

Defendant cites *United States ex rel. Smith v. Rowe*, 618 F.2d 1204 (7th Cir.), *vacated sub nom. Franzen v. Smith*, 449 U.S. 810, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980), in support of reversal. In *Rowe*, the prosecutor commented on the failure of the defendant's girlfriend to give her story exculpating the defendant to police prior to trial. However, the prosecutor's comments in *Rowe* embraced both the defendant and the witness. In contrast, the comments objected to by defendant in this case went only to the failure of Greer and Flores to come forward. The prosecutor's remarks did not embrace the silence of both defendant and the witnesses, and were not capable of being interpreted as referring to defendant's failure to testify. *See State v. Hoffman.* We find nothing in the prosecutor's comments implying collusion between defendant and his witnesses. A prosecutor may make comments about the evidence, and is given latitude in his closing argument, in which he may discuss inferences which can be drawn from the evidence. *State v. Hernandez.* We hold the prosecutor's comments in this case did not infringe upon defendant's right to remain silent. *See State v. Hoffman; Shadd v. United States.*

## COURT'S FAILURE TO INSTRUCT ON DEFENSE OF PROPERTY AND OF OTHERS

In closing argument, defense counsel asserted that defendant acted in self-defense. The trial court instructed the jury on self-defense. However, the trial court refused requested instructions on defense

**120**

of property and defense of others. Defendant argues there was evidence supporting both instructions. He contends that a defense of property instruction was justified by evidence that he was found at his home. Defendant argues that a defense of others instruction should have been given based on testimony from his wife that she feared Aten. Flores testified that she left the house because she was afraid the three men would return. Defendant also argues that his leaving the house was indicative of his wanting to lead trouble away from his family.

Defendant asserts, without citation to authority, that self-defense, defense of property, and defense of others are legitimate defenses to a charge of felon in possession of a firearm. We note that our statute does not exclude from its operation felons who are defending themselves. *See* NMSA 1978, § 30–7–16 (Cum.Supp.1989). In some states, the statute explicitly permits the defense. *Cf.* Miss.Code Ann. § 97–37–9(a) (Cum.Supp.1989). Courts have reached contrary results in determining whether the fact that the weapon was acquired for self-defense or to prevent its use against the defendant is available as a defense to the prosecution for violation of felon in possession statutes. *See generally* Annotation, *Fact that Weapon Was Acquired for Self–Defense or to Prevent Its Use Against Defendant as Defense in Prosecution for Violation of State Statute Prohibiting Persons Under Indictment for, or Convicted of, Crime from Acquiring, Having, Carrying, or Using Firearms or Weapons,* 39 A.L.R.4th 967 (1985); *Thorpe v. State,* 377 So.2d 221 (Fla. Dist.Ct.App.1979) (defense of self-defense unavailable to defendant charged with being felon in possession, even where defendant wrests gun from assailant).

We leave to another day the question of whether self-defense, defense of property, and defense of others are available as defenses to a charge of felon in possession of a firearm. Our review of the record discloses no evidence supporting instructions on defense of property or defense of others. We agree with the trial

court's reasoning that there was no evidence that Aten and the other two men ever intended to harm defendant's family or property. Defendant alone was the object of the three men's scorn. We do not believe the jury could have reasonably inferred from the evidence that there was ever an appearance of danger to defendant's family or property. Just as the trial court is not required to give a self-defense instruction when the evidence does not support one, it is not required to give instructions on defense of property and defense of others where there is no evidence, even assuming such defenses are available. *See State v. Gammill,* 102 N.M. 652, 699 P.2d 125 (Ct.App.1985). The trial court correctly denied defendant's requested instructions on defense of property and defense of others.

CONCLUSION

For the foregoing reasons, defendant's conviction is affirmed.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.