815 P.2d 659

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Julio Rojas VASQUEZ, Defendant–
Appellant.**

**No. 12021.**

Court of Appeals of New Mexico.

June 6, 1991.

Certiorari Denied July 29, 1991.

Tom Udall, Atty. Gen. and Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender and Amme M. Hogan, Asst. Appellate Defender, Santa Fe, Anthony Filosa, Filosa & Filosa, Truth or Consequences, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals his conviction for unlawful possession of a controlled substance and the trial court's denial of his motion to suppress evidence seized by a border patrol officer in a warrantless search at an immigration checkpoint. He contends that his right to be free of unreasonable searches and seizures was violated when a bag of marijuana was seized from the undercarriage of his truck. Because we determine that the officer did not have probable cause or other basis to remove the bag of marijuana from underneath the truck, we reverse.

## FACTS

Defendant was travelling north on Interstate 25 in Sierra County, New Mexico, when his truck was stopped at a border patrol immigration checkpoint. The purpose of the checkpoint was to check the identification of drivers and to determine if any motor vehicles were transporting aliens that were in the United States illegally (illegal aliens). *See United States v. Bowman*, 487 F.2d 1229 (10th Cir.1973).

About one and one-half miles before reaching the checkpoint, defendant stopped his truck. This is commonly referred to as a "stop short." A "stop short" is usually a signal to border patrol officers that "something is wrong." For example, one agent's testimony indicated that drivers of vehicles may stop short of a checkpoint to permit illegal aliens to exit and then walk around the checkpoint. Such stops are also made to change drivers if the original driver has no license. At the time of the "stop short" in this appeal, the checkpoint was not visible to defendant, nor was defendant's truck visible from the checkpoint. However, Agent Johnston, one of the officers on duty at the checkpoint, had been radioed information by another officer that defendant had stopped before reaching the checkpoint. Defendant later approached the

checkpoint slower than the normal flow of traffic, slowing down dramatically two or three hundred yards from the checkpoint. When asked about his citizenship, defendant appeared nervous. His eyes darted back and forth and his hands shook. Defendant's passenger avoided eye contact with Agent Johnston. After some delay, defendant produced the requested identification. Defendant's passenger, however, continued to have difficulty in locating his identification. Traffic was heavy and began building up at the checkpoint. Following Agent Johnston's request, defendant moved his truck to the secondary area.

At the secondary area, the passenger located documents to show that he was in the United States legally. By this time, however, Agent Johnston had noticed some blankets behind the truck's seat. He had previously found illegal aliens hidden under blankets. When asked what was in the truck, defendant responded "blankets," got out of the truck, and put the blankets into the bed of the truck. Defendant continued to appear nervous. At this point, Agent Johnston walked around the truck. He testified that he was looking for false beds, fresh bolt marks, and any other evidence that defendant was transporting illegal aliens. As Agent Johnston walked around the truck, he bent over at the left rear wheel well.

Defendant's truck was a Chevrolet pickup truck, customized with a chrome running-board that ran along the side of the vehicle, close to the ground. Agent Johnston stated that the running-board, together with his knowledge that trucks often have large cavities between the bed and side of the truck, compelled him to look under the truck. He testified that he thought a person might be hiding there, although he had never found a person in such a location before. He did not notice anything unusual during this initial visual inspection. However, when standing at the left rear corner of the truck, he noticed a white five-by-two-inch piece of paper protruding from between the cab and frame on the truck's underside. The paper caught the agent's eye because it was snow-white, in sharp contrast to the dirty truck. He thought the paper might be part of a package. To investigate the nature of the paper further, he got down on his back and slid under the truck. He then noticed that the paper was in fact part of a large bag labelled "diapers." He touched the bag and felt something soft and crunchy inside. He then pulled the bag out from the undercarriage. Noting that the contents of the bag smelled like marijuana, he slid out from under the truck, opened the bag, and found marijuana. A later "canine sniff" of the truck revealed a second bag of marijuana wedged under the truck.

## DISCUSSION

Defendant challenges the legality of (1) Agent Johnston's ordering the truck to the secondary area; (2) the extended detention at the secondary area after the requested identification was provided; (3) the examination of the truck's underside; and (4) Agent Johnston's removal, and subsequent opening of the diaper bag. He does not challenge the legality of the initial detention at the checkpoint. We hold that Agent Johnston's actions under issue four exceeded the permissible limits of a warrantless search and seizure. We thus need not address issues one through three but, for purposes of our discussion, will assume, without deciding, that the actions involved under issues one through three were lawful.

Initially, we note that the state has the burden of proving that the seizure and subsequent search of the diaper bag was justified without a search warrant. *See State v. Mann*, 103 N.M. 660, 712 P.2d 6 (Ct.App.1985); *State v. Gonzales*, 97 N.M. 182, 637 P.2d 1237 (Ct.App.1981). For purposes of this appeal, we assume that Agent Johnston was lawfully entitled to observe the underside of defendant's truck. *See United States v. Price*, 869 F.2d 801 (5th Cir.1989); *State v. Bolton*, 111 N.M. 28, 801 P.2d 98 (Ct.App.1990). However, we must also determine whether Agent Johnston's removal, and eventual opening, of the diaper bag was justified. Agent Johnston's actions were conducted without a search warrant. It thus becomes neces-

sary to examine whether these actions were within the permissible limits of a warrantless search and seizure.

Although the diaper bag was visible to Agent Johnston, the contents of the diaper bag were not. Because the contents were concealed, it is reasonable to conclude that defendant exercised a possessory interest in the contents of the diaper bag. We must therefore determine whether the contents of the diaper bag were protected by the fourth and fourteenth amendments of the United States Constitution. *See State v. Miles*, 108 N.M. 556, 775 P.2d 758 (Ct. App.1989).

■ Agent Johnston's mere observation of the diaper bag did not produce any additional invasion of defendant's privacy. However, the agent's action of removing the diaper bag from the truck's undercarriage resulted in an additional invasion of defendant's possessory interest and therefore constituted a seizure. *See Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *United States v. Williams*, 822 F.2d 1174 (D.C.Cir.1987). Seizures conducted without a warrant are "per se unreasonable" unless an exception to the warrant requirement is applicable. *See United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). Therefore, in this appeal, we must determine whether the search fell within any one of the recognized exceptions. We explore two potentially applicable exceptions: (1) whether the "automobile exception" justified the diaper bag's seizure; and (2) whether Agent Johnston's actions were proper under the "plain view" exception to the warrant requirement.

■ We first consider the automobile exception. In *State v. Capps*, 97 N.M. 453, 455, 641 P.2d 484, 486, *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982), our supreme court set forth two requirements of the automobile exception: "(1) [t]here must be probable cause that the automobile contains evidence of a crime, and (2) there must be an exigency to search the automobile at that moment, because of the automobile's mobility and fear that evidence could be destroyed." Included in the second requirement is the premise that the automobile, as opposed to a particular container within the automobile, is the target of the officer's suspicion. *See United States v. Williams; State v. Capps.*

Under the factual scenario of this appeal, Agent Johnston had specifically targeted the diaper bag as the focus of his suspicion. For this reason, we conclude that the second requirement set forth in *Capps* was not met. Additionally, for the reasons noted later in our discussion, Agent Johnston did not have probable cause to believe that the bag contained evidence of a crime at the time the bag was seized. We thus hold that the automobile exception is not applicable.

■ We now examine the second exception—whether Agent Johnston's actions were justified under the "plain view" exception to the warrant requirement. Since we have previously assumed that Agent Johnston was lawfully entitled to observe the underside of defendant's truck, we need not specify whether his observation of the truck's underside fell under the "plain view" doctrine or under the "open view" doctrine. The open view doctrine is applicable when there has been no search or prior intrusion at all, in the fourth amendment sense, and the officer observes an object that is not subject to any reasonable expectation of privacy. Under this doctrine, the incriminating nature of the evidence need not be immediately apparent. *See State v. Powell*, 99 N.M. 381, 658 P.2d 456 (Ct.App.1983). Nor is it necessary that the evidence be inadvertently discovered. *See id.*

■ Regardless of which doctrine is applicable, however, it is essential that the officer have probable cause before seizing the evidence. For example, in *State v. Miles*, we held that, before evidence in plain view is seized, the incriminating nature of the evidence must be immediately apparent and, absent exceptional circumstances, the officer must also have probable cause that the item is subject to seizure. *See also Arizona v. Hicks* (probable cause is required before officers may seize

an item in plain view without a warrant). Similarly, we conclude that, to seize an item in "open view," probable cause is also required. Under the facts of this appeal, we hold that neither probable cause nor the incriminating nature of the diaper bag was apparent when Agent Johnston seized it.

■ With respect to the issue of probable cause, we observe that the need for a search warrant is obviated if the contents of the container can be inferred by the container's outward appearance or if the contents are in plain view. *See Arkansas v. Sanders*, 442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979). Similarly, a search warrant is not necessary if the container is transparent or clearly reveals its contents. *See Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *United States v. Williams.* In this appeal, however, the contents of the diaper bag were not visible through the wrapper, so that they could not be discerned from the bag's outward appearance. Although the diaper bag was in an unusual location, we believe this alone was insufficient to establish probable cause. Additionally, factors supporting Agent Johnston's reasonable suspicion to detain defendant's truck did not rise to the level of establishing probable cause to seize the diaper bag. *See State v. Zelinske*, 108 N.M. 784, 779 P.2d 971 (Ct.App.1989), *overruled in part, State v. Bedolla*, 111 N.M. 448, 806 P.2d 588 (Ct.App.1991) (although defendant was lawfully detained at a roadblock and consented to search of trunk, once that consent was withdrawn, officers needed probable cause to search the container inside).

■ In this appeal, those factors included the defendant's "stop short," the slowing down of defendant's truck two or three hundred yards before the checkpoint, and the apparent nervousness of defendant and his passenger. Although Agent Johnston smelled marijuana, he did not notice the smell until after he pulled the bag out from the truck's undercarriage. We recognize that the smell of contraband is sufficient to establish probable cause. *See United States v. Bowman; State v.*

*Capps.* However, we cannot consider this evidence unless it was initially established that it was lawful for Agent Johnston to seize the diaper bag in the first place. *State v. Zelinske* (courts will not consider facts and circumstances unknown by the officers or considered to be insignificant at the time of the search or seizure in order to establish probable cause).

■ To the extent that the state argues that Agent Johnston's touching of the diaper bag established probable cause that the bag contained contraband, we disagree. We recognize the "plain touch" exception, which applies when an officer's lawful touching of a container renders the contents so apparent so as to be encompassed within the "plain view" exception. However, the "plain touch" exception applies only if a lawful touching convinces the officer to a reasonable certainty that the container holds contraband or other evidence of a crime. *See United States v. Williams.* In the present case, Agent Johnston testified that when he touched the diaper bag, he had no opinion with respect to its contents. Clearly, then, Agent Johnston was not convinced that the diaper bag contained contraband. It was not until he later detected the odor of marijuana that he suspected the bag contained contraband. By then, the unlawfulness of the seizure had completed its tainting effect. We thus conclude that the "plain touch" exception was not applicable to the facts of this appeal.

■ Additionally, for the same reasons that we conclude probable cause was not established, we also conclude that the incriminating nature of the diaper bag's contents was not immediately apparent. Agent Johnston testified that he became curious why a diaper bag would be wedged underneath the truck and that, upon touching the bag, he had no opinion whatsoever regarding its contents. This testimony alone is sufficient to convince us that the incriminating nature of the diaper bag's contents was not immediately apparent. *Cf. State v. Miles* (officer testified that, in the past, he had seen twelve to fifteen similar wooden boxes containing drug para-

phernalia and thus readily recognized box at issue as also containing drug paraphernalia).

CONCLUSION

■ Having determined that Agent Johnston's warrantless seizure of the diaper bag was unreasonable, neither falling within the automobile nor plain view exceptions, it follows that the opening of the bag was also unlawful. The same is true for the contraband discovered later after the "canine sniff." *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We thus reverse defendant's conviction and the trial court's order denying defendant's motion to suppress.

IT IS SO ORDERED.

ALARID, C.J., concurs.

HARTZ, J., dissents and files an opinion.

HARTZ, Judge, (dissenting).

I respectfully dissent. In my view, when Agent Johnston saw the "diaper" bag wedged under the vehicle, he had probable cause to seize and search it.

The border patrol checkpoint involved in this case is a permanent checkpoint. Reference to it has appeared in reported decisions for almost two decades. *E.g., United States v. Anderson,* 468 F.2d 1280 (10th Cir.1972). Persons who are transporting contraband or undocumented aliens are likely to be aware of its location. Given the presence of the town of Truth or Consequences approximately three miles south of the checkpoint, it is reasonable for border patrol agents to suspect that when a vehicle "stops short" south of the checkpoint, the occupants are preparing for the checkpoint inspection, rather than taking care of personal needs or vehicle problems. Testimony at the suppression hearing confirmed that the experience of border patrol agents warrants suspicion concerning vehicles that stop short. Thus, when an agent on patrol noted defendant's pickup parked approximately one-and-a-half to two miles south of the checkpoint, he radioed that information to the checkpoint.

The suspiciousness of the stop short was enhanced by the manner in which the vehicle approached the checkpoint. The pickup approached the checkpoint slower than the normal flow of traffic and slowed down dramatically two or three hundred yards from the checkpoint. When Agent Johnston engaged the occupants in routine questioning concerning their citizenship and documentation, defendant and his passenger appeared nervous. Both fumbled in obtaining their identification. Because of the heavy traffic at the time, Agent Johnston directed the vehicle to move out of the line of traffic to the secondary area. This was not only lawful, but appropriate. Reasonable suspicion is not required to engage in routine questioning, and nothing in the United States Constitution requires that such questioning, no matter how much it is prolonged by the inability of the occupants of the vehicle to produce proper identification, must be conducted in the normal line of traffic, thereby delaying other motorists.

At the secondary area Agent Johnston noted that a blanket covered the space behind the front seat of the pickup. Because undocumented aliens could have been concealed there, he was justified in extending the detention to make an inquiry. When he asked defendant what was behind the seat, defendant said "blankets," jumped out of the cab, and began pulling the blankets out and tossing them into the bed of the pickup. Although there were no persons or obvious contraband under the blanket, defendant's peculiar behavior (including the stop short) justified further detention to examine the exterior of the vehicle. This examination could properly include looking under the vehicle, which does not constitute a search. *See United States v. Price,* 869 F.2d 801 (5th Cir.1989); *United States v. Garcia,* 616 F.2d 210, 212 (5th Cir.1980); *cf. State v. Bolton,* 111 N.M. 28, 801 P.2d 98 (Ct.App.1990) (underside of truck was visible from vantage point down the hill). In short, Agent Johnston's actions were lawful up to the time that he observed the bag stuck in the truck's undercarriage.

His conduct thereafter raises interesting questions in the law of search and seizure.

Did he need probable cause or reasonable suspicion to touch the outer portion of the bag to try to determine the nature of its contents? Did he need probable cause or reasonable suspicion to remove the bag from its storage place in order to smell its contents? These questions need not be answered. Once Agent Johnston observed the bag, he had probable cause to seize and search it. Although one can conceive of legitimate purposes in stashing items other than contraband in a bag at that location, common sense—which is the touchstone of probable cause, *see State v. Bowers,* 87 N.M. 74, 529 P.2d 300 (Ct.App.1974)—tells us that there was a strong probability that the contents of the bag were contraband.

Several reported decisions have held that the nature of a hiding place in itself can provide probable cause. In *United States v. Price* the court ruled that once border patrol agents discovered a secret compartment under a vehicle, they had probable cause to search it. *See United States v. Garcia* (probable cause for border patrol agents to search concealed compartment under bed of pickup). In *Bolton* we held that border patrol agents had probable cause to search a phony gas tank on a vehicle. *United States v. Elsoffer,* 671 F.2d 1294 (11th Cir.1982), upheld the seizure and search of a package that a deplaning passenger at an airport was carrying in the front of his trousers from his waistline to the crotch. The court wrote, "[T]he unusual size and shape of the bulge and, given its unusual size and shape, its abnormal position on Elsoffer's person alone pro-vided not only reasonable suspicion but also probable cause for Elsoffer's arrest." *Id.* at 1299; *see United States v. Palen,* 793 F.2d 853, 858 (7th Cir.1986); *United States v. Ilazi,* 730 F.2d 1120, 1127 (8th Cir.1984) (defendant refused to explain bulge on inside of his boot).

The manner in which the bag was concealed, together with the stop short of the pickup and the agitated behavior of defendant at the checkpoint, established probable cause to seize and search the bag for contraband. The subjective state of mind of Agent Johnston is irrelevant. *See State v. Apodaca,* 112 N.M. 302, 814 P.2d 1030 (Ct.App.1991). No warrant was necessary. *See id.*

Of course, once Agent Johnston smelled marijuana from the bag, he could lawfully detain the vehicle for the thirty-five or so minutes necessary to bring back to the checkpoint a specially trained dog, which resulted in the discovery of additional marijuana. *See United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (luggage can be detained on reasonable suspicion). (I need not discuss whether the inevitable-discovery rule would require upholding the second search even if the seizure and search of the "diaper" bag was unlawful.)