# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Filing Date: March 25, 2009

**NO. 31,049**

**STATE OF NEW MEXICO**,

     Plaintiff-Appellee,

v.

**KAREN SMALLWOOD**,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
Michael Eugene Vigil, District Judge

Hugh W. Dangler, Chief Public Defender
Lelia Lorraine Hood, Assistant Public Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**SERNA, Justice.**

{1}    Karen Smallwood (Defendant) pled no contest to felony murder, NMSA 1978, § 30-2-1(A)(2) (1963), though she reserved her right to appeal the district court's

denial of her motion to suppress. She argues that the warrantless seizure of her car was unreasonable under both the New Mexico and federal constitutions and that the warrant authorizing the search of her car was not supported by probable cause. *See* U.S. Const. amend IV; N.M. Const. Art. II, § 10. We affirm.

**I.    FACTS**

{2}    On October 13, 2004, Ursula Duran (Victim) was found shot to death at her aunt and uncle's house in Santa Fe. Nine millimeter projectiles and casings were found at the scene. Victim's purse, checkbook, ATM card, keys, and a roll of quarters were missing from the house.

{3}    When Detective Bill Johnson obtained Victim's bank records, they showed that there had been multiple ATM withdrawals subsequent to the time of Victim's death, one just minutes after the time that police suspected Victim was shot. In viewing the surveillance videos from three ATM machines, police identified Defendant as the individual using Victim's ATM card. In one of the videos, Defendant was seen driving a silver 1997 Saturn with Arizona license plate 390KMM.

{4}    An informer, Sharon Clahchischillage, told Detective Johnson that Defendant had a storage unit in Santa Fe and that she possibly had been sleeping in it. Clahchischillage also told police that when she knew Defendant in the past, Defendant had shown her a semi-automatic pistol that she owned. Another informer, Elizabeth Findling, told Detective Johnson that Defendant had mentioned that "she would live in a storage shed if she could get away with it."

{5} Investigators confirmed that Defendant had a storage unit and identified its location. The storage facility's records showed that Defendant entered the storage unit approximately one-half hour after the time that police suspected Victim was shot and when Defendant first used Victim's ATM card. At that time, Defendant paid several months' rental fee for her unit in cash. The records also showed that Defendant entered the storage unit early the following morning after another use of Victim's ATM card.

{6} After obtaining a search warrant for Defendant's storage unit, Detective Johnson entered it and found nearly two hundred spent nine millimeter casings and projectiles. He also found information leading to a relative of Defendant in New York who provided an address where Defendant was staying with other family members in Florida.

{7} Detective Johnson contacted Florida law enforcement and requested assistance in locating and arresting Defendant pursuant to an outstanding arrest warrant for the fraudulent use of Victim's ATM card.

{8} At 8:00 p.m. on Friday, October 29, 2004, Florida law enforcement officers went to the address where they believed Defendant was staying to check whether her vehicle was there. The vehicle was there, though it is unclear from the record whether it was located on the street or on Defendant's relatives' property. There is no evidence that the vehicle was parked illegally or otherwise subject to removal. When the officers consulted vehicle registration records, the car was listed as belonging to

Defendant.

{9}     The officers knocked on the door of the residence and Defendant's relative answered. The relative confirmed that Defendant was inside and gave his consent for the officers to enter and arrest Defendant and to search and seize her belongings in the home.

{10}     At 9:40 p.m., though they did not have a warrant to seize Defendant's vehicle, the officers had the vehicle towed to the county sheriff's office, per the request of Detective Johnson from Santa Fe. Detective Johnson later testified that he directed the Florida police to seize the vehicle without a warrant because he was unfamiliar with the process of obtaining a warrant over the weekend in Florida and he wanted to be present when the vehicle was searched. The vehicle was apparently not searched over the weekend. Detective Johnson flew to Florida and, on the morning of Monday, October 31, 2004, assisted the Florida police with obtaining a search warrant for Defendant's car. The ensuing search produced evidence inculpating Defendant in both Victim's murder and the unauthorized use of Victim's ATM card, including a nine millimeter pistol, ammunition, and eight hundred dollars in twenty dollar bills.

{11}     Defendant was indicted for murder, aggravated burglary, two counts of unauthorized ATM withdrawl, and tampering with evidence. Defendant moved to suppress the evidence that the police obtained through the warrantless seizure and subsequent search of her car. The district court denied the motion, concluding that the seizure and search were reasonable. Defendant entered a conditional no contest plea

to felony murder and reserved her right to appeal the suppression issue. She was sentenced to life.

## II. DISCUSSION

### A. The Warrantless Seizure of Defendant's Car Was Reasonable

{12}     Defendant argues that the seizure of her car was unreasonable under both the Fourth Amendment of the U.S. Constitution and Art. II, Section 10 of the New Mexico Constitution because police did not have a warrant and no exception applies.

{13}     The State has the burden of showing that a particular seizure was reasonable. *State v. Vasquez*, 112 N.M. 363, 366, 815 P.2d 659, 662 (Ct. App. 1991). Warrantless seizures are per se unreasonable unless an exception to the warrant requirement applies. *Id.* at 367, 815 P.2d at 663. The exception applicable here is the automobile exception, which allows warrantless seizures or searches of vehicles under exigent circumstances when police have probable cause to believe that the fruits or instrumentalities of crimes are contained therein. *See Carroll v. United States*, 267 U.S. 132, 149 (1925). Thus, there are two prongs to the automobile exception: probable cause and exigent circumstances.

{14}     Since the automobile exception exists in some manner in the jurisprudence of both the Fourth Amendment and Article II, Section 10 and Defendant preserved her argument under both provisions, our interstitial approach to constitutional interpretation requires that we first address Defendant's claims under the federal constitution and then, if she is not protected thereunder, we analyze whether she is

protected under the New Mexico Constitution. *See State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1.

**1.      The Warrantless Seizure of Defendant's Car Was Reasonable Under the Fourth Amendment**

**a.      There Was Probable Cause to Search Defendant's Car**

{15}      First, in order to justify the warrantless seizure of Defendant's car, the police must have had probable cause to believe that it contained lawfully seizable items. *See Carroll*, 267 U.S. at 149. Probable cause exists when there are reasonable grounds to believe an offense has been committed or seizable evidence exists in the particular place. *See, e.g.*, *Husty v. U.S.*, 282 U.S. 694, 701 (1931). Whether there was sufficient probable cause to make a warrantless search or seizure is reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

{16}      The strongest fact supporting probable cause that there was seizable evidence in Defendant's car was that she was seen in her car in one of the incriminating ATM surveillance videos. While the record is not clear whether Defendant simply drove to the banks to make the unauthorized withdrawals from Victim's account in her automobile or whether she utilized the drive-through ATM service and thus made the unauthorized withdrawals from within her automobile, either way it was plainly reasonable for the police to conclude that Defendant's car contained evidence of the unauthorized withdrawals. Further, since the use of Victim's ATM card was so closely tied to her murder, indeed access to Victim's money may have been the motive

behind her murder, any belief that evidence of the use of the ATM card would have also tied Defendant to the murder was reasonable and supported the ultimate determination of probable cause.

{17}    An additional factor supporting the police determination that Defendant's car may have contained seizable evidence came from the fact that they suspected that she did not have a home apart from the storage unit and had just driven all the way from Santa Fe to Florida in her car.  Thus, it was reasonable for the police to suspect that the car was the main repository of Defendant's personal effects.  Since there was strong evidence linking Defendant to Victim's murder (most notably the use of Victim's ATM card after her death and the spent ammunition in the storage unit of the same kind used to kill Victim), but the gun used to kill Victim was still missing, it was reasonable for the police to suspect that the weapon was in the car.  Because there were reasonable grounds to believe that seizable evidence was located in Defendant's car, the police had probable cause to search it.

**b.      The Exigent Circumstances Prong of the Automobile Exception is Satisfied Under the Fourth Amendment**

{18}    The second traditional requirement for satisfaction of the automobile exception is that there must exist exigent circumstances to justify the warrantless search or seizure.  The requirement of exigent circumstances comes from the original rationale for the automobile exception, that cars may be quickly removed from the particular jurisdiction and the efforts of law enforcement thereby thwarted.  *See, e.g.*, *Cooper v.*

*California*, 386 U.S. 58, 59 (1967); *Preston v. United States*, 376 U.S. 364, 366-67 (1964).  While the idea that exigency inhered in the mobility of automobiles was prominent in the early automobile exception cases, *see, e.g.*, *Chambers v. Maroney*, 399 U.S. 42, 51 (1970); *Cooper*, 386 U.S. at 59; *Carroll*, 267 U.S. at 153-54, the subsequent cases justify warrantless searches and seizures of automobiles not only on the mobility of automobiles but also on a car owner or occupant's diminished expectation of privacy.  *See California v. Carney*, 471 U.S. 386, 393 (1985) (holding that the warrantless search of a mobile home comports with the Fourth Amendment because mobile homes are readily capable of mobility and because the heavy government regulation of vehicles results in a reduced expectation of privacy).

{19}    The growing reliance on the diminished expectation of privacy and the concomitant lessening reliance on the inherent mobility of automobiles for justification of warrantless searches has meant that federal courts have relaxed the required showing of exigency.  *See id.*  Thus, under the Fourth Amendment, exigent circumstances may now be found, and the automobile exception applied, based solely on the fact that an automobile is involved, without a separate showing that the automobile was likely to be moved or the evidence inside subject to destruction.  *See id.*; *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976) (concluding that the warrantless inventory search of an impounded vehicle was reasonable); *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001) (holding that, since *Carney*, "the necessity of a special exigency has waned"); *United States v. Mercado*, 307 F.3d

1226, 1231 (10th Cir. 2002) ("[W]hen probable cause exists, the agents' time and opportunity to obtain a warrant are irrelevant.") (internal citation and quotation marks omitted). In light of the foregoing, the warrantless seizure of Defendant's vehicle satisfies Fourth Amendment scrutiny.

**2.      The Warrantless Seizure of Defendant's Car Was Reasonable Under Article II, Section 10 of the New Mexico Constitution**

**a.      There Was Probable Cause to Search Defendant's Car**

{20}      Next, we consider whether the warrantless seizure of Defendant's car was reasonable under Article II, Section 10 of the New Mexico Constitution. Like the federal automobile exception, the first prong of the exception in New Mexico hinges on whether there was probable cause to believe that lawfully seizable items were present in the automobile. *See, e.g.*, *State v. Rowell*, 2008-NMSC-041, ¶ 26, 144 N.M. 371, 188 P.3d 95. In this respect, it is identical to the federal automobile exception and warrants no discussion apart from that above. Because police had reasonable grounds to believe that there was evidence of the unauthorized ATM withdrawals and the murder in Defendant's car, there was probable cause to search it.

**b.      There Were Exigent Circumstances to Seize Defendant's Car Under Article II, Section 10 of the New Mexico Constitution**

{21}      It is the exigent circumstances prong where Article II, Section 10 precedent differs from that of the Fourth Amendment. In New Mexico, we have rejected the federal bright-line rule and instead require that the State make a particularized showing of exigent circumstances to justify the warrantless search of an automobile.

9

*Gomez*, 1997-NMSC-006, ¶ 39. The purpose of *Gomez* "was to keep intact the fact-specific nature of reasonableness determinations under search and seizure principles." *State v. Bomboy*, 2008-NMSC-029, ¶ 6, 144 N.M. 151, 184 P.3d 1045. "The reasonableness inquiry looks at the particular facts of a situation to evaluate whether an objectively reasonable, well-trained officer could have determined that swift action was called for to prevent destruction of evidence . . . ." *Rowell*, 2008-NMSC-041, ¶ 30. Thus, in the instant case, we ask whether the arresting officers could have objectively and reasonably determined that seizing Defendant's car was necessary to prevent the destruction of evidence therein.

{22} It would have been objectively reasonable for the officers to have believed that the warrantless seizure was necessary to preserve evidence because the car was parked outside the home of Defendant's relatives and they may have attempted to destroy or remove evidence to protect her.[1] In *Gomez*, this Court upheld the warrantless search of an automobile where the officer believed that the search was necessary to prevent the destruction or removal of the evidence by the surrounding crowd. *See Gomez*, 1997-NMSC-006, ¶¶ 8, 41-42; *cf. Bomboy*, 2008-NMSC-029, ¶ 2 (concluding that the warrantless seizure of contraband evidence in plain view inside an automobile is justified by the exigent circumstances exception). Because Defendant's car was

---

[1] While the record seems to reflect that Defendant's relatives were cooperative with police, this fact does not undermine the ultimate judgment of police that the integrity of the evidence may have been at risk.

parked outside the home of her relatives and was potentially subject to their control, an objectively reasonable, well-trained officer could have determined that the warrantless seizure of Defendant's car was necessary to prevent the destruction of evidence therein. *See Rowell*, 2008-NMSC-041, ¶ 30.

{23} Moreover, a seizure affects an individual's possessory interest while a search affects an individual's privacy interest. Police encroachment on the privacy interest is the greater intrusion. We conclude that the officers' decision to seize the car until they could obtain a warrant for the greater intrusion was the prudent, and thereby proper, course of action. We are particularly persuaded that the warrantless seizure of Defendant's car was reasonable in light of our previous pronouncement in *Gomez*:

> It would have been reasonable—and perhaps preferable—for [the officer] to have refrained from searching the vehicle and closed containers within it until after it was impounded, at which point he could have obtained a warrant. This course of action would have shown more deference to the warrant process.

*Gomez*, 1997-NMSC-006, ¶ 43. Because the police in the instant case followed our guidance and took the "preferable" course of action, we decline to find fault with their actions.

{24} Defendant argues that the police could have stationed an officer at her car to prevent the removal or destruction of evidence while another officer attempted to secure the warrant. However, this procedure also may have given rise to a seizure because posting a guard at the car would only have been effective if the guard would have excluded anyone attempting to enter or move the car. Thus, posting a guard to

exclude Defendant's family members from her car would have been constitutionally indistinguishable from the impoundment which actually occurred.

{25}     Article II, Section 10 requires a "fact-specific . . . reasonableness determination[]" to determine the applicability of the automobile exception to a particular warrantless seizure. *See Bomboy*, 2008-NMSC-029, ¶ 6. Having reviewed the facts, we conclude that there were exigent circumstances sufficient to justify the warrantless seizure of Defendant's car. Specifically, it was objectively reasonable for the police to determine that swift action, in the form of a seizure, was needed to prevent the potential destruction of incriminating evidence by Defendant's nearby relatives.

**c.     The Warrant to Search Defendant's Car Was Supported by Probable Cause**

{26}     "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *accord* N.M. Const. Art. II, Sec. 10; *see also* Rule 5-211(E) NMRA (requiring probable cause to be based on substantial evidence). There is a strong preference that searches be conducted pursuant to warrants. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

{27}     The facts supporting the affidavit for search warrant were largely the same facts underlying the probable cause determination made predicate to the warrantless seizure of Defendant's car. Having reviewed and accepted the probable cause determination

12

made by the officers in our above analysis, we necessarily accept the same determination made by the magistrate. The search warrant for Defendant's car was supported by probable cause and does not require suppressing the evidence found pursuant to it.

## III.   CONCLUSION

{28}   For all of the above reasons, we affirm the district court in the denial of Defendant's motion to suppress.

{29}   **IT IS SO ORDERED.**


_____

**PATRICIO M. SERNA, Justice**

**WE CONCUR:**


_____

**EDWARD L. CHÁVEZ, Chief Justice**


_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**CHARLES W. DANIELS, Justice**