867 P.2d 418

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Johnny RAMZY, Defendant–Appellee.**

**No. 14301.**

Court of Appeals of New Mexico.

Nov. 8, 1993.

Certiorari Denied Jan. 10, 1994.

Tom Udall, Atty. Gen., John Utton, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jake R. Evans, Jake R. Evans & Associates, PA, Las Cruces, for defendant-appellee.

## OPINION

HARTZ, Judge.

The State appeals an order suppressing physical evidence seized from the vehicle Defendant was driving. We affirm.

**FACTS**

While on patrol on January 24, 1992, Dona Ana Sheriff's Deputy Carl Link observed Defendant driving a 1981 Pontiac Firebird. Eight days earlier Link had issued Defendant a citation for driving with a suspended license. Link signaled Defendant to pull his car to the side of the road.

After the stop Defendant left his vehicle, walked toward Link, and said, "Come on Link, give me a break." Link instructed Defendant to return to his vehicle. Defendant complied. When Lt. Jerry Little arrived to assist him, Link approached Defendant's vehicle. He could not see inside the car because the side windows were tinted. He knocked twice on the driver's-side window. After a short pause Defendant partially rolled down the window. Link observed a cellular phone in the front seat and an empty box for sandwich bags on the car floorboard near the center console. Link requested Defendant's driver's license and proof of registration and insurance. Defendant provided no such documents, explaining that the vehicle belonged to his girlfriend.

Link returned to his police vehicle to request a computer check on the status of Defendant's driver's license. Fifteen min-

utes later Link received a report that Defendant's license was still suspended. He then asked Defendant to come out of his vehicle. Defendant did not comply. Saying that he needed to make a phone call, he rolled up the window. Shortly thereafter Defendant opened the car door. Link heard Defendant say, "They are taking me in," and believed Defendant to be talking on his cellular phone. When Defendant came out of his vehicle, he was placed under arrest. Incident to the arrest Link searched Defendant, finding a wad of money on his person consisting primarily of five-, ten-, and twenty-dollar bills. A subsequent accounting determined the amount of money to be $388.

Little then began an inventory search as part of the procedure for impoundment of the vehicle. He found an empty box for sandwich bags, a pager, and a cellular phone in the main compartment of the car, and stereo equipment mounted in the trunk. When Little asked Defendant if anything else of value was underneath the stereo, Defendant became nervous. Defendant then tried to turn the vehicle over to a passerby who was observing the incident. The passerby looked confused and did not respond to Defendant. During the inventory search the officers received a report over the police radio advising them to use caution because Defendant was possibly involved with narcotics.

After the above-described events Little requested a canine unit. He testified at the suppression hearing that he was concerned about Defendant's demeanor, thought the items he found in the car were unusual, and believed narcotics might be in the car. He also testified that he did not normally call a canine unit when inventorying a vehicle, that the dog, Sparky, arrived in approximately ten minutes, that Sparky did not go anywhere Little had not already been, and that the canine sniff did not extend the length of time required to perform the inventory search. Sparky's handler first took Sparky to the rear of the vehicle. Sparky immediately jumped into the trunk, which had already been opened as part of the inventory search, and alerted to the stereo equipment. Sparky's handler stated that he did not phys-

ically put Sparky into the trunk but that Sparky jumped into the trunk on his own.

When Sparky alerted to the stereo equipment, the officers searched the trunk but found no drugs. Sparky's handler testified that the odor of narcotics could travel through the vehicle. The handler let Sparky in the vehicle's interior, where he alerted to the console between the front seats. The officers lifted the console out of its compartment and found another pager and a plastic bag containing cocaine. The sniff procedure took approximately one minute.

## DISCUSSION

On appeal Defendant does not challenge the initial stop, the arrest, or the impoundment of the vehicle. Nor does he challenge the general authority of law enforcement officers to conduct a proper inventory of an impounded vehicle. His complaint regarding the search focuses on Sparky.

We assume, although we need not decide, that once Sparky alerted to the presence of narcotics within the vehicle, the officers had probable cause to believe that narcotics were present in the vehicle and therefore could perform a warrantless search of the vehicle. *See United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985) (exigent circumstances not required to justify warrantless search of vehicle lawfully in police custody); *Michigan v. Thomas*, 458 U.S. 259, 260, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982) (same); *State v. Capps*, 97 N.M. 453, 456, 641 P.2d 484, 487 (smell of marijuana alone can satisfy probable cause requirement), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). Under that assumption the legality of the search that discovered the narcotics depends on the legality of Sparky's presence in the trunk of Defendant's vehicle.

■ The State argues that Sparky's presence was lawful under the inventory-search exception to the traditional requirement that searches be conducted only pursuant to probable cause and with a warrant.

*See State v. Williams*, 97 N.M. 634, 636, 642 P.2d 1093, 1095, *cert. denied*, 459 U.S. 845, 103 S.Ct. 101, 74 L.Ed.2d 91 (1982). Such a search is constitutional if: "1) the vehicle to be inventoried is in police control or custody; 2) the inventory is made pursuant to established police regulations; and 3) the search is reasonable." *Id.* Under the State's theory, the use of Sparky was a reasonable adjunct to the inventory search because the use of Sparky did not prolong the inventory search and Sparky did not go anywhere that the officers had not previously inspected. The State failed, however, to establish the essential fact that the use of Sparky was in accordance with standard inventory procedure. Because the officers were not following a routine procedure established by police regulations, the use of Sparky cannot be justified under the inventory-search exception. *See Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *State v. Shaw*, 115 N.M. 174, 848 P.2d 1101 (Ct.App.1993). We need not decide whether routine use of a dog trained to detect narcotics would be a reasonable routine inventory procedure.

■ At oral argument the State suggested an alternative justification for Sparky's presence in the trunk of Defendant's vehicle. Given that the vehicle had been lawfully stopped and was lawfully in police custody, the State contends that no search is involved if the police use a dog to sniff the exterior of the vehicle. *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Rodriguez–Morales*, 929 F.2d 780, 788 (1st Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992); *United States v. Morales–Zamora*, 914 F.2d 200, 203–05 (10th Cir.1990); *State v. Villanueva*, 110 N.M. 359, 362, 796 P.2d 252, 255 (Ct.App.), *cert. denied*, 110 N.M. 260, 794 P.2d 734 (1990). The State then points to authorities suggesting that no Fourth Amendment right is violated when a drug-sniffing dog instinctively leaps into a vehicle during an otherwise lawful sniffing procedure.[1] *See United States v.*

---

1. Entry into the trunk of a vehicle, even an open trunk, is an intrusion governed by the Fourth and Fourteenth Amendments because, at least in New Mexico, persons have a reasonable expecta-

tion of freedom from intrusion in that area. *See State v. Rodriguez*, 101 N.M. 192, 194, 679 P.2d 1290, 1292 (Ct.App.) (entry into bed of pickup truck may constitute burglary; bed of pickup is

*Stone,* 866 F.2d 359, 363–64 (10th Cir.1989); *United States v. Watson,* 783 F.Supp. 258, 265 (E.D.Va.1992); *Idaho Dep't of Law Enforcement v. $34,000 United States Currency,* 121 Idaho 211, 215–16, 824 P.2d 142, 146–47 (App.1991).

The problem with this argument is that the State did not make it in district court. Although the district court hearing developed many of the facts relating to the search, we cannot assume that Defendant pursued all factual avenues that he would have pursued if the State had made the argument below. For example, in determining whether Sparky's presence in the trunk was solely the result of instinct, one might want to know precisely why the trunk was still open and how Sparky was trained. Given the factual component of this argument, we cannot let the State raise it for the first time on appeal. *See State v. Alingog,* 116 N.M. 650, 866 P.2d 378 (Ct.App.1993).

## CONCLUSION

For the foregoing reasons we affirm the order of the district court.

**IT IS SO ORDERED.**

MINZNER, C.J., and ALARID, J., concur.

statutorily protected), *cert. denied,* 101 N.M. 189,     679 P.2d 1287 (1984).