1998-NMCA-044

956 P.2d 139

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Christopher WARSAW, Defendant–Appellant.**

No. 18045.

Court of Appeals of New Mexico.

Dec. 17, 1997.

Certiorari Denied March 5, 1998.

**10**

Tom Udall, Attorney General, Margaret McLean, Asst. Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sara T. Harmon, Asst. Appellate Defender, Santa Fe, for Appellant.

## OPINION

APODACA, Judge.

1. Defendant pled guilty to attempted possession of cocaine with intent to traffic, reserving his right to appeal the trial court's denial of his motion to suppress. He challenges the trial court's judgment on three grounds: (1) the police officers and their dog committed an illegal search before Defendant's consent, (2) the pre-consent search was unlawful under the plain view or open view theories, and (3) exigent circumstances did not justify the warrantless search and seizure. Persuaded by Defendant's arguments, we reverse his conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. On a Saturday in May of 1995, Defendant was involved in a one-car accident on Interstate 10 near Las Cruces. Brad Anderson, a tow truck driver, responded to the crash. He arrived at the scene midafternoon and found state police officer Frietz there. Defendant's girlfriend and his child, who were occupants of Defendant's car, had been taken to the hospital in Las Cruces. The car was considerably damaged and inoperative. The trunk lid was open as a result of the accident. Anderson testified that Defendant could not prevent the towing because Defendant rolled the car and the trooper had signed a release form to the company.

3. After Officer Frietz left, Defendant confided in Anderson that he had a pound of cocaine in the car. Anderson towed the car to the impound lot, and Defendant rode with him. The impound lot had a high chain link fence with blinders and barbed wire, and a lock restricted the gate. An employee living behind the lot kept an eye on it at night.

4. At the impound lot, with the trunk lid still open, Defendant tried to dig into the left rear trunk area of the car with a tire tool but was unable to remove anything. Defendant then offered $2,000.00 to Anderson for his assistance, but Anderson declined. Defendant stated that he wanted to take a flight out that evening and inquired about recovering his vehicle. Anderson replied that Defendant would not be able to recover his vehicle until Monday morning, when his boss would be present. Anderson stated that there was no way Defendant could get the car out during the weekend.

5. Anderson then took Defendant to a hotel. Afterward, Anderson dropped Defendant off at the hospital where Defendant's girlfriend and child had been taken. Soon after, Anderson informed his boss of the drugs in Defendant's car, and the boss instructed Anderson to call the police. Anderson contacted Frietz, the same officer who investigated the accident. Anderson complied with Frietz's request to meet him in the impound lot and open the gates. Officer Williams, a dog handler, also arrived at the lot with his dog Trax and his partner. Anderson showed Defendant's car to the officers.

6. Williams then conducted a safety inspection of the vehicle to prevent injury to the dog. He noticed that the trunk lid was open. He did not attempt to close the lid because he believed that the trunk could not be closed due to the damage. Williams observed broken glass on the carpet in the

trunk and removed the carpet from the trunk. He then "introduced" Trax to the vehicle by stimulating the dog to locate drugs. Trax alerted to the left rear wheel well and jumped into the trunk. The dog then stuck his nose into the fender well. Officer Williams rewarded him and pulled him out of the vehicle.

7. Williams testified that dogs commonly jump into an area and that they were trained to inspect a vehicle entirely. He also explained that dogs have a habit of jumping into open areas such as an open door or trunk.

8. After Trax alerted to the fender well, the officers took a closer look at the area. Sticking his head into the trunk, Officer Williams observed a plastic baggie containing white powder, which to him appeared to be cocaine. He also saw white powder on the fender well.

9. Agent Cordova then arrived and looked into the trunk. Bending over the trunk, he saw a plastic baggie containing white powder. The agent testified that he did not have to get inside the trunk physically to see the baggie. Officers Cordova and Frietz decided to go to the hotel to speak with Defendant. Cordova informed Defendant of the allegations against him and gave him Miranda warnings. Defendant accompanied the police to the station, where he signed an advice of rights form and a consent to search the vehicle. Cordova called Williams, informing him that Defendant had consented to a search of the car. Cordova then requested and received a statement from Defendant.

10. After learning of Defendant's consent, Williams and another officer used a hydraulic jack to straighten the left rear fender. The area around the gas cap was cut to access the white powder. The officers found approximately three and one-half pounds of cocaine. Cordova later arrested Defendant.

11. Defendant moved to suppress the evidence seized from his vehicle as the result of what he argued was an illegal search. The trial court concluded that: (1) there were no exigent circumstances; (2) Defendant's statement to Anderson was a basis of probable cause to search the vehicle; (3) the dog's alert on the exterior of the vehicle was probable cause concerning contraband in the vehicle; (4) the search occurred after Defendant's consent to search; (5) the dog did not make the search; (6) perhaps the dog should not have been in the vehicle, but at most that further supported probable cause; (7) had Defendant not consented, the police were required to obtain a warrant; and (8) sufficient probable cause existed to obtain a warrant notwithstanding the dog's alert in the trunk. On these grounds, the trial court denied Defendant's motion to suppress.

## II. DISCUSSION

### A. Standard Of Review

12. We consider an appeal from the denial of a motion to suppress as a mixed question of law and fact. *In re Paul T.*, 1997 NMCA 071, ¶ 8, 123 N.M. 595, 943 P.2d 1048. We determine whether the law was correctly applied to the facts as viewed in the light most favorable to the ruling below. *Id.* The trial court's legal conclusions are reviewed de novo, and we will not disturb the trial court's factual findings if supported by substantial evidence. *State v. Leyba*, 1997 NMCA 023, ¶ 8, 123 N.M. 159, 935 P.2d 1171.

### B. The Search

13. Defendant first argues that, under both the federal and state constitutions, the dog handler and the dog committed an illegal search before Defendant's consent was obtained. *See* U.S. Const. amend. IV; N.M. Const. art. II, § 10. The State contends that the police's actions prior to consent were not a search.

14. "The Fourth Amendment protects legitimate expectations of privacy." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). A search is an intrusion on a legitimate expectation of privacy. *See id.* To determine whether an individual has a legitimate expectation of privacy, we consider: (1) whether the individual's conduct demonstrated a subjective expectation of privacy, and (2) whether society recognizes the individual's expectation of privacy as reasonable. *See Smith v.*

*Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *State v. Donaldson,* 100 N.M. 111, 118, 666 P.2d 1258, 1265 (Ct.App.1983).

15. We first evaluate whether Defendant has shown that he sought to preserve the contents of his trunk as private. *See Smith,* 442 U.S. at 740, 99 S.Ct. at 2580. Defendant attempted to get the car released from the impound lot. He tried to access the trunk area with a tire tool. Finally, Defendant sought Anderson's assistance in obtaining the contents located in the trunk area. These actions show that Defendant desired to preserve the privacy of the contents of his trunk.

16. Second, we determine whether society recognizes as reasonable Defendant's subjective expectation of privacy. *See Smith,* 442 U.S. at 740, 99 S.Ct. at 2580; *Donaldson,* 100 N.M. at 118, 666 P.2d at 1265. In *State v. Ramzy,* 116 N.M. 748, 750 n. 1, 867 P.2d 418, 420 n. 1 (Ct.App.1993), this Court held that the Fourth Amendment governed entry into an open trunk. *Ramzy* recognized that people have a reasonable expectation of freedom from intrusion in that space. *Id.*

17. The police officers here violated Defendant's expectation of privacy in his open trunk. Officer Williams reached into the trunk to remove the glass-laden carpet because he expected the narcotics dog to jump in there. Trax, under the preparation, guidance, and stimulation of Officer Williams, jumped into the open trunk. These factors distinguish this case from *United States v. Stone,* 866 F.2d 359, 363 (10th Cir.1989) and *United States v. Watson,* 783 F.Supp. 258, 265 (E.D.Va.1992) where the narcotics dogs were not encouraged to jump into the cars. Finally, the officers bent their heads into the trunk to view the object of Trax's alert. As we explain below, these activities constituted an illegal search. Additionally, there is simply no view of the evidence to support the proposition that these activities occurred after Defendant's consent to search was obtained.

**C. Constitutionality Of The Search**

18. New Mexico has adopted the interstitial approach to constitutional interpretation. *State v. Gomez,* 1997 NMSC 006, ¶ 20, 122 N.M. 777, 932 P.2d 1. The interstitial approach requires the court to first ascertain whether the federal constitution protects the asserted right. *Id.* ¶ 19. If it does, then the court does not reach the state constitutional claim. *Id.* Following our interstitial approach, we initially consider whether federal constitutional law protects Defendant. *See id.* ¶ 33. Under federal law, the warrantless search of an automobile is lawful so long as there is probable cause. *See id.* ¶¶ 34–35. Here, the trial court held, and we agree, that there was probable cause to search Defendant's car, based solely on the information provided by Anderson, the tow truck driver. Consequently, Defendant's motion to suppress fails under the United States Constitution. *See id.*

19. The New Mexico Constitution, however, provides greater protection against warrantless search and seizures. Article II, Section 10 requires both probable cause and exigent circumstances for the warrantless search of an automobile. *See Gomez,* 1997 NMSC 006, at ¶ 39, 122 N.M. 777, 932 P.2d 1. We agree with the trial court that there were no exigent circumstances. Defendant's car was taken to the impound lot. Anderson told Defendant that he would not be able to recover the car for several days. Additionally, the impound lot had numerous security measures including a fence, lock, and guard. Under these conditions, a reasonable officer could not determine that exigent circumstances existed. *See id.* ¶ 40. Consequently, unless some other exception to the warrant requirement is present, the officers' search was unlawful. *See id.* ¶ 39.

**D. The Plain View And Open View Theories**

20. The State asserts that the search prior to consent was valid under the plain view or open view theories. The plain view doctrine refers to a seizure of evidence discovered during an intrusion that has a prior justification. *See Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *State v. Calvillo,* 110 N.M. 114, 117, 792 P.2d 1157, 1160 (Ct.App.

1990). The open view doctrine concerns observations made by an officer without physical intrusion into a constitutionally protected area. *See State v. Vasquez,* 112 N.M. 363, 367, 815 P.2d 659, 663 (Ct.App.1991); *Calvillo,* 110 N.M. at 117, 792 P.2d at 1160. A warrant is not required for evidence seized in plain or open view. *See Vasquez,* 112 N.M. at 367, 815 P.2d at 663.

■ 21. We agree with Defendant that neither doctrine justifies the police's actions prior to Defendant's consent. The plain view doctrine does not condone the seizure. As we held previously, the officers violated the Fourth Amendment in the actions taken to discover where the evidence was and to view the evidence. *See Horton,* 496 U.S. at 136, 110 S.Ct. at 2308. The open view doctrine does not apply because the police, by penetrating Defendant's trunk, intruded into a constitutionally protected area. *See Vasquez,* 112 N.M. at 367, 815 P.2d at 663; *Ramzy,* 116 N.M. at 750 n. 1, 867 P.2d at 420 n. 1.

### E. Consent As Justification For The Seizure

22. The State argues that Defendant's consent rendered a warrant unnecessary and that the seizure occurred after Defendant consented. *See State v. Munoz,* 111 N.M. 118, 119, 802 P.2d 23, 24 (Ct.App.1990).

■ 23. We have held, however, that the police's illegal search occurred before Defendant consented. This illegal search tainted Defendant's consent. *See State v. Bedolla,* 111 N.M. 448, 455, 806 P.2d 588, 595 (Ct.App.1991). When contacting Defendant at the hotel, Officer Cordova exploited the illegality by using information obtained during the search. After Cordova presented the evidence against Defendant obtained during the illegal search, Defendant consented. The officer's presentation of this evidence surely affected the voluntariness of Defendant's consent. We thus hold that Defendant's consent did not justify the resulting seizure. *See id.* at 455–56, 806 P.2d at 595–96.

### III. CONCLUSION

24. This appeal illustrates a scenario in which the police officers had probable cause and both the time and opportunity to obtain a search warrant. Their failure to do so under these circumstances resulted in a violation of Article II, Section 10 of the New Mexico Constitution. As a result, we conclude that the police committed an illegal search before obtaining Defendant's consent. We also hold that the plain view and open view theories did not justify the search and that Defendant's consent did not legitimize the later seizure. Consequently, we reverse the trial court's denial of Defendant's motion to suppress.

25. **IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.