8 P.3d 157

2000-NMCA-071

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Roger Van CLEAVE, Defendant–**
**Appellant.**

**No. 20,036.**

Court of Appeals of New Mexico.

June 19, 2000.

Certiorari Granted, No. 20,036,
Aug. 8, 2000.

**356**

Patricia A. Madrid, Attorney General, William McEuen, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

APODACA, Judge.

{1} Defendant was convicted of possession with intent to distribute methamphetamine and possession of drug paraphernalia. He appeals from the denial of his motion to suppress evidence seized from his automobile by United States Border Patrol agents. Defendant raised various issues on appeal, which, for purposes of our disposition, we have consolidated as three issues: (1) his consent to "inspect" the trunk of his vehicle was not voluntary; (2) even if his consent was voluntary, the use of a dog sniff to "search" the trunk exceeded the scope of consent; and (3) exigent circumstances did not exist to justify the warrantless search. We hold that, even assuming Defendant's

consent was voluntary, the consent did not extend to the use of a dog sniff to search his open trunk. We therefore reverse. Because of our disposition, we need not address Defendant's remaining issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Early on the morning of December 10, 1996, Defendant approached the United States Border Patrol fixed checkpoint at Orogrande, New Mexico. Agent James Stack, working the primary checkpoint area, did not recognize Defendant as one of the regular commuters who normally pass through the checkpoint at this early hour. The agent inquired of Defendant's citizenship. Defendant responded that he was a U.S. citizen. The agent then asked where Defendant was coming from. Defendant replied he was going to visit his grandparents in Alamogordo and then continuing to Grants for work. Agent Stack found Defendant's response "peculiar" since the agent had not inquired of Defendant's destination but rather his starting point. The agent again asked Defendant where he was traveling from, and Defendant answered that he had spent two days visiting a friend in Chaparral, New Mexico.

{3} Seeing no overnight bag in the car, Agent Stack asked Defendant if he was carrying any luggage. Defendant responded that he had none. Noticing that the ignition key was on a yellow tag, which Agent Stack believed was normally used by automobile dealerships, the agent asked if the vehicle belonged to Defendant. Defendant replied that it belonged to his friend, Buck, but was uncertain about Buck's last name. The agent then requested the registration or title documents for the vehicle. While Defendant was searching through some papers above the visor, the agent observed Defendant "intensely" examining a piece of paper that was titled "Denver Institute of Technology–Enrollment Form." At this time, the agent noticed that Defendant's hands were shaking and that his chest was rising rapidly, indicating nervousness. Defendant was unable to produce any documents for the vehicle. Upon request, Defendant produced a two-

month old driver's license with a home address in Alamogordo.

{4} Agent Stack next requested Defendant's consent to "inspect" the vehicle's trunk. Upon receiving Defendant's consent to inspect the trunk, the agent directed him to the secondary area, where Defendant got out and opened the trunk. At this point, Agent Joe Martinez approached the open trunk with his dog. Agent Stack directed Agent Martinez to conduct a dog sniff of the vehicle by the open trunk. The dog alerted to the open trunk, and Defendant was placed in custody. A warrantless search of the vehicle uncovered illegal drugs and drug paraphernalia. Defendant filed a motion to suppress the evidence seized, which the trial court denied.

## II. DISCUSSION

### A. Standard of Review

{5} In determining whether a trial court has erred in ruling on a motion to suppress, we examine "whether the law was correctly applied to the facts, viewing [the facts] in the manner most favorable to the prevailing party. All reasonable inferences in support of the court's decision will be indulged in[,] and all inferences or evidence to the contrary will be disregarded." *State v. Esquerra*, 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App. 1991). "[T]he denial of a motion to suppress evidence will not be overturned on appeal if the denial is supported by substantial evidence." *State v. Hernandez*, 1997–NMCA– 006, ¶ 18, 122 N.M. 809, 932 P.2d 499. Additionally, "we review mixed questions of law and fact de novo, particularly when they involve constitutional rights. Searches and seizures [that] impact Fourth Amendment rights present just such a question." *Id.*

### B. Scope of Consent

{6} For purposes of our discussion, we will assume without deciding that Defendant voluntarily consented specifically to the agent's "inspection" of the trunk. This assumption next requires us to address the issue of whether the eventual search exceeded the consent given, thus invalidating the initial voluntariness of the consent. *See State v.*

*Garcia*, 1999–NMCA–097, ¶ 9, 127 N.M. 695, 986 P.2d 491 ("If a search exceeds the scope of consent it is 'not pursuant to a voluntary consent,' and is therefore invalid.") (quoting *State v. Valencia Olaya*, 105 N.M. 690, 695, 736 P.2d 495, 500 (Ct.App.1987)).

{7} "The scope of [a] search is defined by and limited to the actual consent given." *State v. Flores*, 1996–NMCA–059, ¶ 22, 122 N.M. 84, 920 P.2d 1038. "The scope of an individual's consent is measured by an objective reasonableness standard, that is, what a reasonable person would have understood by the exchange between the [agent] and the suspect." *Garcia*, 1999–NMCA–097, ¶ 9. Consent will not be considered voluntary and will thus be deemed invalid if the "search exceeds the scope of consent." *Id.*

{8} To determine if the scope of consent has been exceeded, we must examine the first tier of the analysis on the voluntariness of the consent, articulated in *Valencia Olaya*,—(whether "the consent was unequivocal and specific"). *Valencia Olaya*, 105 N.M. at 694, 736 P.2d at 499. We therefore must determine whether Defendant's consent to inspect the trunk of his vehicle *specifically* included a consent to use a dog to sniff the open trunk. Put another way, we consider "whether the evidence will support an inference that [D]efendant voluntarily consented to a search of the [trunk]." *Id.* at 695, 736 P.2d at 500. "If the evidence permits an inference that [D]efendant consented to a [dog sniff] search of the [trunk], the trial court's ruling must be sustained on the ground that the consent given was unlimited." *Id.*

{9} In this case, to the contrary, in contending that the dog sniff exceeded the scope of consent, Defendant relies on *United States v. Winningham*, 140 F.3d 1328 (10th Cir.1998) and *State v. Warsaw*, 1998– NMCA–044, 125 N.M. 8, 956 P.2d 139. In *Winningham*, the officers opened the door of the defendant's van, obtained his permission a dog sniff of the van, and then directed the dog to the open door. *See Winningham*, 140 F.3d at 1329. The court acknowledged that "[c]onsent is not to be lightly inferred or *unnecessarily extended*." *Id.* at 1330 (emphasis added). The court determined that

directing the dog to the open door established a "desire to *facilitate* a dog sniff of the van's interior" and exceeded the scope of consent. *Id.* at 1331. Under the facts in this appeal, Agent Stack requested Defendant to open his trunk and then directed Agent Martinez to conduct a dog sniff of the open trunk. The trial court found that the State had not met its burden of showing that Defendant's consent included a dog sniff of the trunk. We agree with the trial court that these facts, similar to those found in *Winningham*, established a desire on the part of Agent Stack to facilitate a search of the open trunk that went beyond the scope of Defendant's consent.

{10} *Warsaw* discussed the privacy expectations protected under the Fourth Amendment. *See Warsaw*, 1998–NMCA–044, ¶ 14. This Court determined there that "the Fourth Amendment governed entry into an open trunk." *Id.* ¶ 16. The officers in *Warsaw* encouraged a dog to search the open trunk of the defendant's vehicle. *Id.* ¶ 17. Agent Stack gave the same encouragement here. We held in *Warsaw* that such action by law enforcement officers constitutes a violation of a defendant's constitutional right against illegal searches. *Id.* We recognize that some of the facts were different in *Warsaw*—namely, consent was not specifically an issue in that case and the defendant was not even present when the officers searched an already-opened trunk. The trunk had been damaged and opened as a result of an accident. This factual variation, however, only highlights the real issue before us—the scope of consent. *Warsaw* clearly held that an individual has a reasonable expectation of privacy concerning objects found in his trunk. *Id.* ¶ 16.

{11} We must consider "whether the individual's conduct demonstrated a subjective expectation of privacy." *Id.* ¶ 14. In other words, could Defendant have a reasonable expectation of privacy if he consented to an "inspection" of the trunk and in fact opened it for the agent? Again, this question emphasizes the issue before us—what was the scope of Defendant's consent? We hold that, in first requesting consent to inspect Defendant's trunk, then directing the dog to sniff downwind of the open trunk, Agent Stack exceeded the scope of consent, resulting in a violation of Defendant's constitutional rights under the Fourth Amendment to the federal constitution. *See Flores*, 1996–NMCA–059, ¶ 22 (holding that when "a search goes beyond the scope of the consent given and there is no unequivocal and specific consent to the particular search," the search is unconstitutional). The two actions of the agent (obtaining consent to inspect and directing the dog sniff) are intertwined or coupled together and must be analyzed and considered as a whole. For that reason, we are not persuaded by the State's reliance on both federal and our own cases holding that a dog sniff around a vehicle alone is not considered a search. *See United States v. Morales–Zamora*, 914 F.2d 200, 203 (10th Cir.1990) (stating that a dog sniff of "the public airspace containing the incriminating odor" is not a violation of an individual's constitutional rights); *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (holding that the use of trained dogs did not constitute a search within the meaning of the Fourth Amendment); *State v. Villanueva*, 110 N.M. 359, 362–63, 796 P.2d 252, 255–56 (Ct.App.1990) (determining that a dog sniff of luggage compartment of a bus was not considered a search within the meaning of the Fourth Amendment).

{12} Based on the facts considered by the trial court, the court concluded that the State failed to meet "its burden of showing by clear and convincing evidence that what Defendant consented to in response to [Agent Stack's] request to 'inspect' the trunk of his vehicle included the use of the canine." *See Garcia*, 1999–NMCA–097, ¶ 8 (stating that the scope of consent "is a question of fact") and ¶ 16 (determining that the defendant's consent to allow officers to "look at" her vehicle did not "encompass drilling into the vehicle"). We must give deference to the trial court's conclusion, which we determine was supported by substantial evidence.

{13} In addition to finding that the State failed to meet its burden of showing that Defendant consented to use of the canine, the trial court also concluded, and the State now argues on appeal, that the question of wheth-

er the trunk was open was irrelevant to the appropriateness of the dog sniff. We disagree. Even though Agent Stack may have had reasonable suspicion to direct Defendant to the secondary area to conduct a dog sniff, we believe that his request that Defendant open his trunk in conjunction with the anticipated dog sniff was a violation of Defendant's constitutional rights. *See United States v. Gay*, 774 F.2d 368, 377 (10th Cir.1985) ("Any police activity that transcends the actual scope of the consent given encroaches on the Fourth Amendment rights of the suspect.").

{14} The State's argument concerning the use of trained detection dogs is unpersuasive because the issue before us is not the use of trained dogs, but the scope of consent. We are also unpersuaded by the State's claim that Defendant did not show that the dog *would not have alerted* to the contraband had the trunk been closed. Because it was the State's burden to show by clear and positive evidence that consent was voluntary, we believe it was the State's burden to show that the dog *would have alerted* in any event with the trunk closed. *See Valencia Olaya*, 105 N.M. at 694, 736 P.2d at 499 (holding that when scope of consent is at issue, it is the State's burden to "establish by clear and convincing evidence that under the totality of the circumstances," defendant's rights were not violated).

{15} The evidence established that Agent Stack's request for consent to inspect the trunk, thus causing Defendant to open the trunk, together with his directing the dog to sniff the trunk, showed a clear "desire to facilitate a dog sniff" of the open trunk and consequently a denial of Defendant's constitutional right against unreasonable searches. *Winningham*, 140 F.3d at 1331; *see also Gay*, 774 F.2d at 377 (stating that exceeding the scope of consent is a violation of an individual's constitutional rights). We simply cannot agree with the trial court's conclusion that the open trunk had no bearing on the dog's ability to sniff out the drugs. Agent Stack's reasonable suspicion became irrelevant when he requested consent to inspect the trunk. *Cf. United States v. Stone*, 866 F.2d 359, 364 (10th Cir.1989) (determining that so long as officers do not ask a defendant to open his trunk, the officers "remain[ ] within the range of activities they may permissibly engage in when they have reasonable suspicion" of criminal activity).

{16} For these reasons, we conclude that the request to inspect the trunk, combined with the direction of the dog sniff, took the agents out of "the range of activities" permissible of law enforcement officers. *Id.* Because the State had the burden of showing that the consent was valid, in order for the State to prevail, it was required to show by clear and positive evidence that the activities fell within the scope of consent. The trial court concluded that the State failed to meet its burden to establish that the "dog sniff" of the trunk was within the scope of consent, and we consider this conclusion to be supported by the evidence and determinative of this appeal. *See Esguerra*, 113 N.M. at 313, 825 P.2d at 245 ("All reasonable inferences in support of the court's decision will be indulged in and all inferences or evidence to the contrary will be disregarded.").

### III. CONCLUSION

{17} We conclude that, although Defendant initially consented to an inspection of the vehicle's trunk, the agent's direction of the dog sniff of the open trunk removed the search from the range of permissible activities of the agent. We thus hold that the trial court erred in denying Defendant's motion to suppress the evidence seized from Defendant's vehicle. We reverse and remand for proceedings consistent with this opinion.

{18} **IT IS SO ORDERED.**

WECHSLER J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

{19} This is a United States Border Patrol fixed or permanent checkpoint case. These fixed checkpoints have become fixtures on our landscape. Persons driving in southern New Mexico should know that fixed checkpoints exist at certain locations and that the agents are interested in both illegal immigration and illegal drugs. *See United States v. Martinez–Fuerte*, 428 U.S. 543, 557–60, 96

S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (holding detention at Border Patrol fixed checkpoint legal). Those persons should also expect that at these fixed checkpoints Border Patrol agents might use drug-sniffing dogs. *See United States v. Morales–Zamora*, 914 F.2d 200, 203 (10th Cir.1990) (holding use of dog at police roadblock to sniff drugs outside vehicle not a search under the Fourth Amendment). My dissent in this case relates only to the use of drug-sniffing dogs at Border Patrol fixed checkpoints.

{20} Cases in federal court involving searches at Border Patrol fixed checkpoints are governed by the Fourth Amendment to the United States Constitution. In these Border Patrol cases, if federal case precedent exists, we should follow it. Although if an appellant has properly raised Article II, Section 10 of the New Mexico Constitution in the trial court and then on appeal, under the requirements stated in *State v. Gomez*, 1997–NMSC–006, ¶ 21, 122 N.M. 777, 932 P.2d 1, we are free to analyze the constitutionality of a search under our New Mexico Constitution and determine whether to read our Constitution to provide broader protection than that provided by the federal courts under the Fourth Amendment. Here, Defendant did not sufficiently raise the New Mexico Constitution and did not ask us to apply our Constitution in a more protective way than the protection afforded by the federal cases decided under the Fourth Amendment.

{21} Under Tenth Circuit case precedent, a dog-sniff outside and around a lawfully detained vehicle at a roadblock is not a search within the meaning of the Fourth Amendment. *See Morales–Zamora*, 914 F.2d at 203. I see the question in the present case to be the following: Does an outside dog-sniff become a search within the meaning of the Fourth Amendment where, as here, during the lawful detention at a Border Patrol fixed checkpoint, the trunk of the vehicle is consensually and voluntarily opened by the driver pursuant to a Border Patrol agent's request "to inspect the trunk," and the agent then directs a dog to the area outside but near the trunk to sniff for drugs?

{22} The Fourth Amendment focus in this case should be whether the use of the dog at a Border Patrol fixed checkpoint is a search, not whether the agent exceeded the scope of consent by use of the dog. The focus in this case necessarily is based on federal law interpreting the Fourth Amendment, and not what State law perhaps should be under the New Mexico Constitution.

{23} When we analyze the underlying purpose of the Fourth Amendment protection against unreasonable searches, we must determine whether the police activity "is an intrusion on a legitimate expectation of privacy." *State v. Warsaw*, 1998–NMCA–044, ¶ 14, 125 N.M. 8, 956 P.2d 139 (citing *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)).

> [W]e consider: (1) whether the individual's conduct demonstrated a subjective expectation of privacy, and (2) whether society recognizes the individual's expectation of privacy as reasonable.

*Warsaw*, 1998–NMCA–044, ¶ 14 (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

{24} It is undisputed here that Defendant consented to the agent's inspection of the trunk, that Defendant got out of the vehicle and opened the trunk, and that Defendant was lawfully detained at the time the agent requested consent to inspect the trunk and during the dog-sniff. It is beyond question that Defendant voluntarily relinquished any expectation of privacy he reasonably had insofar as a trunk inspection by the agent was concerned. That is, Defendant waived any Fourth Amendment protection he may otherwise have had to the agent's inspection of the trunk.

{25} We look then at the steps taken by the agent at the location of the voluntarily-opened trunk and during a lawful detention based on reasonable suspicion. The agent had a dog brought to the vehicle, and located the dog downwind from the trunk for the purpose of inspecting the trunk by sniffing to detect drugs. We analyze this activity in the light of *Morales–Zamora*, in which the Tenth Circuit Court of Appeals held that a dog-sniff of the exterior of a vehicle during a lawful city police roadblock detention is not a search within the meaning of the Fourth Amend-

ment. *See Morales–Zamora*, 914 F.2d at 205. In *Morales–Zamora*, the court held that "society does not recognize a reasonable privacy interest in the public airspace containing the incriminating odor." *Id.; see also Bond v. United States,* 529 U.S. 334, 120 S.Ct. 1462, 1466, 146 L.Ed.2d 365 (2000) (Breyer, J., dissenting) ("Consider, too, the accepted police practice of using dogs to sniff for drugs hidden inside luggage."); *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (deciding that exposure of traveler's luggage at airport to a trained canine did not constitute a "search" within the meaning of the Fourth Amendment); *State v. De Jesus–Santibanez,* 119 N.M. 578, 582, 893 P.2d 474, 478 (Ct.App. 1995) (ruling that drug dog brought to vehicle during lawful detention that alerted to bed of truck satisfied probable cause to then *begin search* ); *State v. Villanueva,* 110 N.M. 359, 362–63, 796 P.2d 252, 255–56 (Ct.App. 1990) (stating that bus passenger has "no privacy right or reasonable expectation of privacy … as to the airspace surrounding closed items of luggage," and dog-sniffs of luggage compartment of bus did not constitute a search within the meaning of the Fourth Amendment).

{26} Defendant distinguishes *Morales–Zamora* by drawing a distinction between the "dog-sniff of the outside of the vehicle" in *Morales–Zamora*, which Defendant characterizes as a "standard 'dog sniff,' in which the dog is run around the outside of the vehicle," and the circumstance in which an agent directs "a drug dog to inspect [an] open[ed] trunk." **[BIC 11]** Defendant calls the latter circumstance a search, and proceeds from that premise to argue that the agent exceeded the scope of Defendant's consent to inspect the trunk.

{27} It seems clear under *Morales–Zamora* that if the agent had not gotten the trunk opened, an exterior dog-sniff and alert to the rear quarter panel would not have constituted a search. Defendant in fact concedes this. If then, pursuant to *Morales–Zamora*, a dog-sniff of the exterior of a vehicle with its trunk closed does not implicate the Fourth Amendment, why is the Fourth Amendment implicated if the exterior drug-sniff occurs at the direction of the agent after an agent requests and a driver consents to opening the trunk? I am unable to implicate the Fourth Amendment based either on the idea of police deception or on the scope of consent.

{28} Were *Morales–Zamora* not present, application of the test of privacy in *Warsaw* would be our primary guideline. Pursuant to *Warsaw*, we ask whether, in the context of the consensual trunk opening for "inspection" combined with the directed exterior dog-sniff, (1) defendant "demonstrated a subjective expectation of privacy," and (2) "society recognizes [that] expectation of privacy as reasonable." *Warsaw,* 1998–NMCA–044, ¶ 14. Boiled down in this manner, I find no demonstration here of any subjective expectation of privacy on Defendant's part. Defendant consented to an inspection of the trunk, and without having to be asked to do so got out of the vehicle and opened the trunk. Defendant was present when Agent Stack had Agent Martinez bring the dog out and when the agent located the dog at the rear of the vehicle. Defendant did not act or conduct himself to indicate any concern, and did not object to the use of the dog. *Cf. State v. Garcia,* 1999–NMCA–097, ¶ 14, 127 N.M. 695, 986 P.2d 491 (contrasting an Eighth Circuit case upholding a search as constitutional "because the defendant stood and watched and did not object," and implying that a defendant can imply consent by failing to object); *see also United States v. Martel–Martines,* 988 F.2d 855, 858 (8th Cir. 1993) ("[F]ailure to object made it objectively reasonable for the officers to conclude that his general consent to search the truck included consent to access the compartment in a minimally intrusive manner").

{29} Nor am I persuaded that any subjective expectation Defendant may have had (of which there exists no evidence in this case) is recognized by society as reasonable. Defendant has presented no argument to support such a recognition. While society and courts, too, unquestionably must be ever vigilant and extremely guarded against government and police intrusion of privacy, I do not find the particular circumstances in this case to be ones requiring us to draw a line and hold the agent's use of the dog unconstitutional under

the Fourth Amendment and case law interpreting the Fourth Amendment.

{30} Furthermore, neither New Mexico case law following federal precedent, nor federal precedent itself, compels a determination that the use of the dog constituted a search. Defendant's primary reliance in arguing to the contrary are two cases, namely, *Warsaw* and *United States v. Winningham*, 140 F.3d 1328 (10th Cir.1998). Neither *Warsaw* nor *Winningham* involved a fixed checkpoint stop, and both cases are also significantly different than the present case.

{31} In *Warsaw*, the trunk of the vehicle was opened due to an accident. *See Warsaw*, 1998–NMCA–044, ¶ 2. The vehicle was towed to an impound lot. *See id.* ¶ 3. Defendant later went to the impound lot and then actually told a lot employee that drugs were in a readily inaccessible area in the trunk. The employee told this to his boss, and the employee's boss instructed the employee to call the police. *See id.* ¶ 5. The police brought a drug-sniffing dog to the impound lot, "introduced" the dog to the vehicle by stimulating the dog to locate drugs, and, after the agent reached into the trunk and cleared glass out from the trunk, the dog alerted to a rear-wheel well and then jumped into the trunk. *Id.* ¶ 6. Defendant at no time consented to any of this police activity and, in fact, had wanted to try to get his drugs out of the car before the police were involved. This Court held that defendant had an "expectation of privacy in his open[ed] trunk." *Id.* ¶ 17.

{32} We reasoned in *Warsaw* that the police officer violated the defendant's expectation of privacy by reaching "into the trunk to remove the glass-laden carpet because he expected the narcotics dog to jump in there," by bending "their heads into the trunk to view the object of [the dog's] alert," and by causing the dog to jump into the opened trunk. *Id.* ¶ 17. We held "these activities" to constitute an illegal search. *Id.* We also held in *Warsaw* that the police had probable cause to search the trunk, but that there were no exigent circumstances to justify a warrantless search. *See id.* ¶ 19. In addition, this Court held that defendant's later consent to search was tainted due to the illegality of the search.

{33} *Warsaw* does not address the issue whether a dog-sniff in the exterior car space is a search or, if a search, is an unreasonable one that violates a person's reasonable expectation of privacy. *See Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (holding that cases are not authority for propositions they did not consider). Furthermore, in *Warsaw* the defendant did not give consent before the police "reached into the trunk," "bent their heads into the trunk," and caused the dog to jump into the trunk through the officer's "preparation, guidance, and stimulation." *Warsaw*, 1998–NMCA–044, ¶ 17. Moreover, this Court determined that the defendant specifically sought to preserve the contents of his truck as private. *See id.* ¶ 15. In the case before us, on the other hand, consent was given to inspect, no agent or dog entered the trunk space, and Defendant took no action to preserve the contents of his trunk as private. Further, unlike *Warsaw*, the issue whether the use of the dog constituted a search is directly before us. *Warsaw* is not authority upon which to reverse the trial court in this case.

{34} *Winningham* is also markedly distinguishable. In *Winningham*, Border Patrol agents obtained consent to search a van. *See Winningham*, 140 F.3d at 1329. They asked the driver to step out of the van, and then *the agents* opened the sliding door of the van and conducted a visual search of its interior. *See id.* Finding nothing, the agents asked for and obtained consent to "run a dog on [the] vehicle." *Id.* The dog sniffed areas outside the van, and then when the dog reached the opened door, it jumped into the van and sniffed the interior, and eventually alerted at a rear vent. *See id.* at 1330. The trial court found that there was no voluntary consent for the dog to enter the cabin and suppressed the evidence. *See id.*

{35} The Tenth Circuit Court of Appeals affirmed, basing its affirmance on two points: *First*, the officers opened the door, and then unleashed the dog as the dog neared the open door, indicating "[a] desire to facilitate a dog sniff of the van's interior"; and second, the officers had no reasonable suspicion, in that "reasonable suspicion was exhausted after [the agent] searched the van's interior."

*Id.* at 1331. The court distinguished its previous decision in *United States v. Stone,* 866 F.2d 359 (10th Cir.1989). *Stone* held that "the Fourth Amendment was not implicated when a trained drug dog leapt into the open[ed] hatchback door of a suspect's car during a valid Terry stop because the dog's action was 'instinctive.' " *Winningham,* 140 F.3d at 1330. The court distinguished *Stone* "on both factual and legal grounds," namely, that the "holding in *Stone* was driven not by what the officers did, but what they did not do," and that "the officers in *Stone* acted under reasonable suspicion, a circumstance underscored by our limited holding." *Id.* at 1330, 1331.

{36} *Winningham* is not authority in this case to reverse the trial court. The court did not address the question whether the dog's activity outside the van constituted a search. In *Winningham,* consent was an issue; whether the dog's use constituted a search was not. Moreover, *Winningham* was concerned with the fact that when the agents used the dog they no longer had reasonable suspicion on which to search inside the van with the use of the dog. *See id.* at 1331. In the present case, as in *Stone,* the agents acted under reasonable suspicion. In addition, in the present case, neither agent nor dog entered the vehicle's trunk space; whereas, in *Winningham,* the agents and the dog entered the van.

{37} It is also important to note that neither *Winningham* nor *Warsaw* mentions *Morales–Zamora,* presumably because neither *Winningham* nor *Warsaw* involve the issue of whether *an exterior dog-sniff* constitutes a search or exceeds the scope of a consent to search.

{38} I am very much aware of a concern that, because of the extraordinary ability a dog has to detect odors, a dog-sniff is in the nature of a technological breakthrough to detect drugs. The canine nose power goes far beyond an agent's power of smell or ability to inspect without a destructive search. The arguments are either that the "game" is no longer fair, or that citizens' privacy is impermissibly invaded, because citizens' expectations are based on human limitations, and not on extraordinary sense or modern technological investigative processes that are not physically intrusive.

{39} However, in this day many travelers are familiar with Border Patrol fixed checkpoints. Many traveling citizens are aware that drug dogs are used at border crossings and in international airports. United States Supreme Court opinions refer to "accepted police practice of using dogs to sniff" for hidden drugs. *Bond,* 120 S.Ct. at 1466 (Breyer, J., dissenting). While there may exist skepticism about the benefit of fixed Border Patrol checkpoints, concern about the consequences if one refuses to allow a trunk inspection or objects to the use of a dog, and fear of encroachments on our Fourth Amendment protections from wrongful racial profiling or retaliation for asserting Fourth Amendment or other rights, no one should be surprised by the use of dogs to sniff around our vehicle at a Border Patrol fixed checkpoint, or even to sniff from outside a trunk that the driver voluntarily opens after giving the agent permission to inspect the trunk.

{40} The focus on scope of consent arises only upon a determination first that the conduct constitutes a search. To deviate from federal law and hold the conduct in this case to constitute a search requires that the *Gomez* preservation requirements be met. Because those requirements were not met, we cannot in this case determine whether New Mexico, under its own Constitution, should broaden the privacy interests of citizens and provide greater protection to citizens when Border Patrol agents use drug-sniffing dogs.

{41} Consistent with the underlying basis for my dissent in *State v. Cardenas–Alvarez,* 2000–NMCA–009, 128 N.M. 570, 995 P.2d 492, I think that Tenth Circuit law validates the use of the dog to sniff outside the vehicle notwithstanding the failure of the agent to obtain Defendant's specific consent to the use of the dog to sniff the voluntarily-opened trunk. And also consistent with my dissent in *Cardenas–Alvarez,* failing proper preservation of the issue below as required in *Gomez,* this Court in the present case should not expand Defendant's Fourth Amendment

protection to outlaw this use of a drug-sniffing dog.