2001-NMSC-031

33 P.3d 633

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Roger Van CLEAVE, Defendant–Respondent.**

No. 26,441.

Supreme Court of New Mexico.

Oct. 9, 2001.

Patricia A. Madrid, Attorney General, William McEuen, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} Defendant was convicted of possession of methamphetamine with intent to distribute, contrary to NMSA 1978, § 30–31–20(A) (1990), and possession of drug paraphernalia, contrary to NMSA 1978, § 30–31–25.1 (1997), after the district court denied his motion to suppress evidence United States Border Patrol agents seized from his vehicle at a fixed checkpoint. The Court of Appeals reversed. *State v. Van Cleave,* 2000–NMCA–071, 129 N.M. 355, 8 P.3d 157, *cert. granted,* 129 N.M. 386, 9 P.3d 69. We issued our writ of certiorari to the Court of Appeals and now address the question of whether United States Border Patrol agents conducted an illegal search under the federal constitution by directing a narcotics dog to sniff downwind from the open trunk of Defendant's vehicle after receiving consent to "look in" or "inspect" the trunk.

{2} We hold that the dog sniff was not a search for Fourth Amendment purposes and therefore did not violate Defendant's federal constitutional rights. We therefore reverse the Court of Appeals with respect to the only issue presented by the petition for certiorari. As a general rule, "only questions set forth in the petition [for writ of certiorari] will be considered by the Court." Rule 12–502(C)(2) NMRA 2001. We therefore remand to the Court of Appeals for consideration of the remaining issues raised on appeal from the district court.

## I.

{3} Defendant entered the United States Border Patrol fixed checkpoint near Orogrande, New Mexico at approximately 5:30 a.m. on December 10, 1996. The checkpoint is on U.S. Route 54, north of El Paso and approximately thirty miles south of Alamogordo. Agent James Stack, who was working the primary inspection area, inquired as to Defendant's citizenship, and Defendant said he was a United States citizen. When asked where he lived, Defendant said he was going to visit his grandparents in Alamogordo and was continuing on to Grants. The agent repeated his question, and Defendant responded that he was staying and working in Grants. The agent then asked Defendant where he was coming from, and Defendant said he had been in Chaparral, New Mexico for two days. The agent saw no luggage in the car and asked Defendant if he was carrying any. Defendant said no. Agent Stack found Defendant's responses to his questions suspicious.

{4} After noticing that Defendant's car keys were the only keys on a yellow tag, which the agent believed was normally used by car dealers, the agent asked Defendant if the car was his. Defendant said that the car belonged to his partner, Buck, in Grants but was unsure about Buck's last name. The agent asked Defendant for his vehicle registration. As Defendant searched through some papers above the visor, the agent saw Defendant "intensely" examining an application for admission to the Denver Institute of Technology. The agent noticed that Defendant's chest was rising rapidly and that the document was trembling in his hands. Although he was unable to produce any ownership documents for the vehicle, Defendant produced his driver's license, which showed a home address in Alamogordo.

{5} Agent Stack asked for Defendant's consent to "look in" or "inspect" the vehicle's trunk. Defendant agreed to the inspection, and the agent directed him to the secondary inspection area. Without any additional request or other prompting from the agent, Defendant got out of the vehicle and opened the trunk. After Defendant had moved clear of the vehicle, Agent Joe Martinez approached the open trunk with a narcotics dog. The dog alerted to the open trunk, and the agents took Defendant into custody, escorted him inside the checkpoint trailer, and advised him of his rights. Agent Martinez then performed a warrantless search of the vehicle based on the dog alert. He discovered drug paraphernalia and the ingredients for making methamphetamine in the trunk and a jar of "pre-finished" methamphetamine on the front seat.

{6} Defendant moved to suppress this evidence under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant argued: (1) that his consent to search the trunk was not freely given as required by the Fourth Amendment, (2) that even if Defendant consented freely to an inspection of the trunk, the agents exceeded the scope of his consent in violation of his Fourth Amendment rights by directing the drug dog to the open trunk, and (3) that although the dog alert gave the agents probable cause to search, the warrantless search of the trunk and the interior of the car were illegal under Article II, Section 10 because there were no exigent circumstances.

{7} After an evidentiary hearing, the trial court denied the motion. First, the court concluded that Agent Stack did not coerce Defendant into giving consent and that Defendant consented freely. Second, the court concluded that the State did not meet "its burden of showing by clear and convincing evidence that what Defendant consented to in response to the agent's request to 'inspect' the trunk of his vehicle included the use of the canine." However, it found that "the use of the dog was reasonable under the totality of the circumstances" and that "[h]aving the trunk open didn't make a difference in this case." Third, the court concluded that Article II, Section 10 did not require the agents to obtain a warrant before searching the interior and trunk of Defendant's car. The court offered alternative bases for this conclusion. It reasoned that *State v. Gomez,* 1997–NMSC–006, ¶¶ 39–40, 122 N.M. 777, 932 P.2d 1, which holds that warrantless searches of automobiles violate Article II, Section 10 of our state constitution unless the State makes a particularized showing of exigent circumstances, does not apply to this case because the search occurred before *Gomez* was decided. Alternatively, the court reasoned, even if *Gomez* does apply, the search did not run afoul of Article II, Section 10 because the search was conducted under exigent circumstances due to "the remote location and limited staffing of the checkpoint."

{8} A divided panel of the Court of Appeals reversed the trial court. *Van Cleave,* 2000–NMCA–071, ¶ 1, 129 N.M. 355, 8 P.3d 157. The two-judge majority assumed without deciding that Defendant had freely consented to the search of the trunk and concluded that the agents exceeded the scope of consent when they directed the drug dog to the open trunk. *Id.* ¶ 6. The majority reasoned that obtaining consent to search and directing the dog to sniff must be analyzed "as a whole" and distinguished the cases that hold that a dog sniff is not a search for Fourth Amendment purposes. *Id.* ¶ 11. Deferring to the trial court's factual findings, the Court concluded that a reasonable person would not have understood the exchange between Agent Stack and Defendant, when Defendant consented to inspection of his trunk, to include the use of a drug dog. *Id.* ¶¶ 12, 16. This holding disposed of the appeal and made it unnecessary for the Court to reach Defendant's other arguments. *Id.* ¶ 1.

{9} Judge Sutin dissented on the grounds that this case is a simple dog sniff case, not a consent case. *Id.* ¶ 22 (Sutin, J., dissenting). According to Judge Sutin, the proper starting point for the Fourth Amendment analysis is whether the dog sniff was a search; the first inquiry should be whether Defendant had a legitimate expectation of privacy in the airspace that contained the incriminating odor. *Id.* ¶¶ 23, 25. Citing cases holding that a dog sniff by a trained narcotics detection dog is not a search because a person does not have a legitimate expectation of privacy in that airspace, Judge Sutin concluded that the agents' conduct did not implicate Defendant's Fourth Amendment rights and that the dog sniff therefore could not have exceeded the scope of Defendant's consent. *Id.* ¶¶ 26–29.

## II.

{10} When reviewing a ruling on a motion to suppress, we review "purely factual assessments to determine if the fact-finder's conclusion is supported in the record by substantial evidence." *State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994). However, we review mixed questions of law and fact de novo, especially if constitutional

rights are involved. *Id.* at 145, 870 P.2d at 107 (reviewing de novo a trial court's conclusion about whether exigent circumstances were present); *Aguilar v. State*, 106 N.M. 798, 799, 751 P.2d 178, 179 (1988) (reviewing de novo a conclusion about whether a confession was voluntary).

{11} Defendant argues that the agents violated his Fourth Amendment right to be free from unreasonable searches by directing a trained dog to sniff for contraband downwind from the open trunk of the vehicle after obtaining consent to "inspect" or "look in" the trunk. The relevant language of the Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The protections of the Fourth Amendment only apply if there has been a search or seizure, so a threshold inquiry in every Fourth Amendment analysis is whether a search or seizure has occurred. Not every investigatory technique is a search for Fourth Amendment purposes. A search is an intrusion on a person's "reasonable 'expectation of privacy.'" *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

{12} In this case, the Court of Appeals concluded that the dog sniff was a search, reasoning that the agent's actions in obtaining consent to inspect and directing the dog to sniff "must be analyzed and considered as a whole." *Van Cleave*, 2000-NMCA–071, ¶ 11, 129 N.M. 355, 8 P.3d 157. We disagree. A person does not have a legitimate expectation of privacy in the odors emanating from his or her belongings in a public place, so the use of a well-trained and reliable narcotics dog in a public place is generally not a search for Fourth Amendment purposes. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990); *State v. Villanueva*, 110 N.M. 359, 362, 796 P.2d 252, 255 (Ct.App.1990). Courts in other jurisdictions have applied this principle in a wide variety of situations. For example, courts have held that no search occurs when law enforcement officers use dogs on vehicles in a motel parking lot, *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir.1993); on vehicles in a school parking lot, *Hearn v. Bd. of Public Educ.*, 191 F.3d 1329, 1332 (11th Cir. 1999); on luggage passing through an airport, *State v. Morrow*, 128 Ariz. 309, 625 P.2d 898, 901–02 (1981) (in banc); *People v. Mayberry*, 31 Cal.3d 335, 182 Cal.Rptr. 617, 644 P.2d 810, 814 (1982) (in bank); on luggage in the luggage rack of a stopped bus, *United States v. Gant*, 112 F.3d 239, 241 (6th Cir. 1997); *United States v. Harvey*, 961 F.2d 1361, 1362–63 (8th Cir.1992) (per curiam); and on vehicles passing through a fixed border patrol checkpoint, *United States v. Dovali–Avila*, 895 F.2d 206, 207–08 (5th Cir.1990) (per curiam). We find it persuasive that courts have consistently applied the Fourth Amendment principle that the use of trained dogs to sniff for contraband in public places is generally not a search and conclude that the agents' use of the dog did not violate Defendant's Fourth Amendment rights.

{13} We agree with Judge Sutin that the scope of consent is not an issue in this case because the use of the dog was not a Fourth Amendment search. Consent is simply one of several different legal justifications for a warrantless search. There is no need to justify a dog sniff that is not a search for Fourth Amendment purposes. Methods of investigation that are not searches do not implicate Fourth Amendment rights, and law enforcement need not obtain consent to employ them. We emphasize that when the State seeks to justify a *search* based on consent, the State must prove that the search did not exceed the scope of the actual consent given. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *State v. Flores*, 122 N.M. 84, 91, 920 P.2d 1038, 1045 (Ct.App.1996). However, the scope of Defendant's consent was a false issue with respect to the dog sniff in this case. The Court of Appeals erred by concluding that the dog sniff was a Fourth Amendment search and by requiring the State to prove that the agents did not exceed

the scope of consent by using the dog to sniff for contraband.

{14} The Court of Appeals relied heavily on two cases in support of its holding. *Van Cleave*, 2000–NMCA–071, ¶¶ 9,10, 129 N.M. 355, 8 P.3d 157. In *United States v. Winningham*, 140 F.3d 1328 (10th Cir.1998), agents pulled over a van based on reasonable suspicion that it might be carrying undocumented aliens. The agents asked for permission to "search the van," and the defendant consented. *Id.* at 1329. An agent "opened the sliding door of the van and conducted a visual search of its interior." *Id.* He found nothing and, leaving the door open, obtained consent to "run a dog on [the] vehicle." *Id.* The dog, who was not leashed at the time, leapt into the van and began to sniff the interior, eventually alerting at a rear vent. *Id.* at 1330. The Court concluded that the agents violated the defendant's Fourth Amendment rights by facilitating the dog's entry into the van. *Id.* at 1331. It was the dog's intrusion into the defendant's private space, not its sniffing at the open van door, that invalidated the search.

{15} Unlike the dog in *Winningham*, the dog in this case neither entered nor touched the vehicle. The agents in this case positioned the dog downwind from the vehicle near the open trunk, which is less intrusive than allowing the dog to enter or touch the vehicle. *Winningham* does not support Defendant's argument. The analysis in *Winningham* indicates that a dog sniff can become a search if the dog intrudes on the private space of the suspect, but such an intrusion did not occur here.

{16} The Court of Appeals also relied on *State v. Warsaw*, 1998–NMCA–044, 125 N.M. 8, 956 P.2d 139. In *Warsaw*, a narcotics dog jumped into the open trunk of the defendant's car after being prompted to do so by a police officer. *Id.* ¶ 17. The Court of Appeals recognized that a person has a reasonable expectation of privacy in an open trunk. *Id.* ¶ 16. After distinguishing cases where the officers neither prompted nor encouraged the dog to enter the protected space, the Court held that "the police officers ... violated Defendant's expectation of privacy in his open trunk." *Id.* ¶ 17.

{17} This case is distinct from *Warsaw* for the same reason this case is distinct from *Winningham*. The dog did not enter the passenger compartment or trunk of Defendant's vehicle. The dog sniff in *Warsaw* was more intrusive because the dog entered the trunk to sniff for contraband. Because the dog did not enter the trunk in this case, no search occurred.

{18} For the reasons explained above, we hold that no Fourth Amendment search occurred when the federal agents directed a trained dog to sniff the odors emanating from the open trunk of Defendant's vehicle after obtaining consent to "inspect" or "look in" the trunk. Because the dog sniff was not a search for Fourth Amendment purposes, the scope of Defendant's consent did not restrict the use of the dog. We therefore conclude that the use of the dog did not violate Defendant's Fourth Amendment rights.

### III.

{19} We hold that the agents did not violate Defendant's Fourth Amendment rights by directing the dog to sniff at the odors emanating from the open trunk of the vehicle. We therefore reverse the Court of Appeals and remand this case to that court with directions to proceed in a manner consistent with this opinion. It is our intention that the issues remaining unresolved as a result of this opinion be resolved by the Court of Appeals. We do not exclude rebriefing, oral argument, or remand to the district court if in the judgment of the Court of Appeals any of those procedural options seem appropriate.

{20} **IT IS SO ORDERED.**

PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, Justice, GENE E. FRANCHINI, Justice and PETRA JIMENEZ MAES, Justice, concur.